**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

|  |  |  |
|---|---|---|
| MUHAMMAD SHAHIDULLAH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 8:20-cv-03602-PWG |
| | ) | |
| ABHA SHANKAR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**</u>
<u>**MOTION TO DISMISS THE COMPLAINT**</u>

Eugene R. Licker (pro hac vice)
BALLARD SPAHR LLP
1675 Broadway, Floor 19
New York, NY 10019
Telephone: (646) 346-8048
Facsimile: (212) 223-1942
lickere@ballardspahr.com

Matthew D. Lamb (Bar No. 20203)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, D.C. 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
lambm@ballardspahr.com

Richard Horowitz (pro hac vice)
845 Third Avenue, 6th Floor
New York, NY 10022
Telephone: (212) 829-8196
Facsimile: (212) 813-3214
rhorowitz@rhesq.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.      PRELIMINARY STATEMENT ............................................................................. 1

II.     STATEMENT OF FACTS ...................................................................................... 3

ARGUMENT ................................................................................................................... 8

THE COMPLAINT HEREIN FAILS TO STATE A CLAIM AND IS OFFERED BY
PERSONS LACKING STANDING AND SHOULD BE DISMISSED ....................................... 8

I.      PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR
        DEFAMATION ...................................................................................................... 8

        A.      New York Law Applies ................................................................................ 9

                1.      Elements of Defamation ................................................................... 9

                2.      Burden is on the Plaintiff ................................................................. 9

        B.      Plaintiffs Are, at Least, Limited Purpose Public Figures ........................... 10

        C.      The Article's Topic is a Matter of Public Concern .................................... 11

        D.      In Either Case, Plaintiffs Must Allege and Prove Actual Malice ............... 11

        E.      Plaintiffs Have Failed to Allege Facts the Proof of Which Would
                Demonstrate Actual Malice ........................................................................ 12

                1.      Plaintiffs' conclusory allegations should be disregarded .............. 13

                2.      Plaintiffs' allegations regarding what Defendant could have
                        done to avoid mistake do not establish actual malice .................. 13

                3.      Plaintiffs' post-publication communications are irrelevant to
                        actual malice ................................................................................. 15

                        i.      Malice is determined at the time of publication ............... 16

                        ii.     Defendant need not rely on Plaintiffs' communications
                                seven months after publication ........................................ 16

                4.      Under these circumstances, Shankar's reporting, even if
                        wrong, was reasonable and certainly not knowingly wrong or
                        reckless ......................................................................................... 17

II.     THE COMPLAINT IS OFFERED BY CAIR, WHO IS WITHOUT
        STANDING, AND IS CHAMPERTOUS ......................................................................... 20

CONCLUSION ...................................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**                                                                **Page(s)**

*A Soc'y Without a Name v. Virginia*,
  655 F.3d 342 (4th. Cir. 2011) .............................................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................8, 9, 15

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015)............................................................................12

*Clatterbuck v. City of Charlottesville*,
  708 F.3d 549 (4th Cir. 2013) ...........................................................................3

*DiBella v. Hopkins*,
  403 F.3d 102 (2d Cir. 2005)..............................................................................9

*Dillon v. City of York*,
  261 A.D.2d 34 (1st Dep't 1999) ........................................................................9

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ............................................................................3

*Fairley v. Peekskill Star Corp.*,
  83 A.D.2d 294 (2d Dep't 1981) .......................................................................10

*Freeman v. Johnston*,
  84 N.Y.2d 52 (1994).................................................................................12, 13

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974).......................................................................................10

*Gross v. N.Y. Times Co.*,
  281 A.D.2d 299 (1st Dep't 2001) ....................................................................12

*Ground Zero Museum Workshop v. Wilson*,
  813 F. Supp. 2d 678 (D. Md. 2011) ..................................................................9

*Haefner v. N.Y. Media*,
  27 Misc. 3d 1208(A), 2009 N.Y. Misc. LEXIS 3641 (Sup. Ct. N.Y. Cnty.
  2009) ............................................................................................................4, 5

*Harte-Hanks Commc'ns v. Connaughton*,
  491 U.S. 657 (1989).................................................................................12, 13

*Herbert v. Lando*,
   781 F.2d 298 (2d Cir. 1986) ...............................................................................16

*Holy Spirit Ass'n v. Sequoia Elsevier Publ'g*,
   4 Media L. Rep. 1744 (Sup. Ct. N.Y. Cnty. Oct. 26, 1978) ...................................10

*Huizenga v. NYP Holdings, Inc.*,
   2019 U.S. Dist. LEXIS 65059 (S.D.N.Y. Apr. 16, 2019) ......................................13

*James v. Gannett*,
   40 N.Y.2d 415 (1976) ...........................................................................................10

*Justinian Capital SPC v WestLB AG*,
   37 Misc. 3d 518 (Sup. Ct. N.Y. Cnty. 2012) ........................................................22

*Justinian Capital SPC v. WestLB AG*,
   43 Misc. 3d 598 (Sup. Ct. N.Y. Cnty. 2014) ........................................................22

*Karaduman v. Newsday, Inc.*,
   51 N.Y.2d 531 (1980) .............................................................................................5

*Lerman v. Flynt Distrib. Co.*,
   745 F.2d 123 (2d Cir. 1984) ..................................................................................10

*Mahoney v. Adirondack Publ'g*,
   71 N.Y.2d 31 (1987) .............................................................................................11

*Martin v. Daily News L.P.*,
   121 A.D.3d 90 (1st Dep't 2014) ............................................................................12

*N.Y. Times v. Sullivan*,
   376 U.S. 254 (1964) ..............................................................................................11

*Peters v. Baldwin Union Free Sch. Dist.*,
   320 F.3d 164 (2d Cir. 2003) ....................................................................................9

*Retfalvi v. United States*,
   930 F.3d 600 (4th Cir. 2019) ...................................................................................3

*Rinaldi v. Holt, Rinehart & Winston*,
   42 N.Y.2d 369 (1977) ......................................................................................12, 16

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..........................................................................................21

*Suson v. NYP Holdings, Inc.*,
   19 Misc. 3d 1116(A), 2008 N.Y. Misc. LEXIS 1939 (Civ. Ct. N.Y. Cnty. Mar.
   31, 2008) ...............................................................................................................12

*Three Amigos SJL Rest., Inc. v. CBS News Inc.,*
 28 N.Y.3d 82 (2016) ..........................................................................................21

*Trust for the Certificate Holders of the Merrill Lynch Mortg. Invs., Inc. Mortg.*
 *Pass-Through Certificates, Series 1999-C1 v. Love Funding Corp.,*
 13 N.Y.3d 190 (2009) ...................................................................................22, 23

*Wightman v Catlin,*
 113 AD 24 (2d Dept 1906) ...............................................................................22

*Yiamouyiannis v. Consumers Union,*
 619 F.2d 932 (2d Cir. 1980) ..............................................................................10

**Statutes**

N.Y. Civ. Rights Law § 76-a ..................................................................................11

N.Y. Jud. Law § 489 ........................................................................................22, 23

**Other Authorities**

D. Md. Local Rule 102(1)(a)(i) ..............................................................................20

Fed. R. Civ. P. 12(b) ......................................................................................1, 2, 8

Fed. R. Evid. 201 ....................................................................................................3

U.S. Const. amend. I ..............................................................................................11

This memorandum of law is respectfully submitted by defendant Abha Shankar in support of her motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the First Amended Complaint (the "Complaint" or "Compl." in citations) herein for absence of subject matter jurisdiction and failure to state a cause of action.

## I.  <u>PRELIMINARY STATEMENT</u>

Plaintiffs sue, demanding one million dollars, because Defendant made a mistake, which she and her employer acknowledged, corrected, and retracted upon Plaintiffs' representatives' demand.  The mistake was that the web site [www.dawahusa.com](www.dawahusa.com) (the "Website") was owned and run by Plaintiff  Dawah USA, Inc.  There is nothing found on the web site to indicate who owns it or to disabuse Ms. Shankar of her belief that it was Plaintiffs' site.  Evidence cognizable on this motion shows that Ms. Shankar had two conversations with Plaintiff Imam Shahidullah in which she informed him that she was writing about his web site, yet he never corrected her mistake and then alleged in his Complaint that the conversations never took place while acknowledging that Defendant claims they did.

About seven months after publication of the mistake, Shahidullah took to social media and tweeted Ms. Shankar: "I want to talk to you about Dawah website.  This is not belong us [sic]."  Compl. ¶ 50.  Given the awkward syntax, the fact that the communication came through social media, the open access to social media, and the propensity of radical Islamic groups to engage in chicanery directed at her employer's mission, Ms. Shankar did not credit the unusual communication. Almost another seven months later, and more than 13 months after publication, a bevy of lawyers for the Council on American Islamic Relations ("CAIR") sent Ms. Shankar's employer a "cease and desist" letter, now claiming that Shahidullah <u>did</u> have a web site but it was dawahusa.<u>org</u> and not dawahusa.<u>com</u>.  After confirming the .org site, IPT (defined below) took down the article containing the mistake and published a correction and retraction.

The matter should have ended there, but it did not.  Plaintiffs sued.  Defendant is a journalist.  The Plaintiffs are public figures who have thrust themselves into the public eye availing themselves of electronic and other media to spread their message.  The article containing the mistake was specifically addressed to the message made public by Plaintiffs and addresses matters of public concern.  Thus, in order to have a sustainable complaint, Plaintiffs must plead (and later prove by clear and convincing evidence) facts (not conclusions) to show that Ms. Shankar published that Shahidullah and Dawah USA, Inc. ran dawahusa.com knowing that the statement was false or recklessly disregarding the truth or falsity of the statement.

Though given three opportunities to do so, Plaintiffs do not even approach meeting their burden and are incapable of doing so.  As discussed in more detail below, Plaintiff's potpourri of strained allegations of fault fail as a matter of fact and law, even when the Rule 12 presumption of truth for the well pled facts is applied.  Ms. Shankar made a reasonable, but, according to Plaintiffs,[1] untrue assumption.  She reached out to Shahidullah for comment, and he failed to correct her.  She sent an email to the Website at issue and received no response.  Despite Plaintiffs' claim that Ms. Shankar purposefully published a falsehood, she corrected and retracted it immediately upon being provided an at least partially verifiable, and certainly very formal, notification of the mistake.  All of the clear evidence contrary to actual malice appears in the Complaint, which is entirely lacking of any factual averments to support a claim of actual malice.  The complaint must, with all respect, be dismissed.[2]

---

[1] Plaintiffs claim not to know who owns dawahusa.com and provide no evidence other than their own unsworn averment that it is not them.

[2] Given that this is Plaintiffs' third failed attempt to articulate a cognizable claim, Defendant respectfully requests that the Court dismiss the Compliant with prejudice.

## II.  **STATEMENT OF FACTS**

This Statement of Facts is taken largely from the Complaint, treating the well-pled facts as true.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  However, "a court is not required to accept legal conclusions drawn from the facts."  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019).   "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that [the plaintiff is entitled to the legal remedy sought]."  *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

The Complaint, however, is not well pled.  First, many of the averments in the Complaint are conclusory and need not be considered by the Court.  *See, e.g., id.* ¶¶ 64, 79 ("Shahidullah is not a public figure").  Second, many of the averments are belied by documentary evidence to which Plaintiffs refer in the Complaint but do not attach as exhibits.  This Court can consider that documentary evidence on this motion.  *See E.I. du Pont,* 637 F.3d at 448; *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013)*.*  Third, the Complaint relies on multiple level hearsay.  For example, Plaintiffs refer to criticisms of Defendant's employer (which is irrelevant) voiced by persons other than Plaintiffs – obvious hearsay.  *See* Compl. ¶¶ 21, 22, 23.  Finally, this is the third iteration of the Complaint.  Each time Defendant made clear the arguments in favor of dismissal, Plaintiffs pared down their Complaint to remove averments that would arm Defendant.  The Court can, however, take judicial notice of the prior pleadings.  *Clatterbuck*, 708 F.3d at 557; Fed. R. Evid. 201. They are submitted herewith as Exhibits A-C to the Affirmation of Eugene Licker, dated April 16, 2021 ("Licker Aff.").

Plaintiff Imam Shahidullah is a respected religious leader in New York City. Compl. ¶ 1. He is "active in interfaith outreach in New York City and has been recognized for his efforts. He

is the director of ITV USA, an online-based Muslim community channel. Imam Shahidullah is also the founder and president of Interfaith Center of USA and a voluntary chaplain for the New York State Chaplain Task Force." *Id.* ¶ 45. "In 2016-2017, Imam Shahidullah created Dawah USA Inc., a 501(c)(3) public charity devoted to promoting and developing cooperation and understanding among people of diverse faiths in general and Muslims in particular." *Id.* ¶ 2. Although Plaintiffs claim that "[a]t the time of Defendant's publication of the Article, Plaintiff Dawah USA Inc. did not have a website," *Id.* ¶ 44, that statement is contradicted, *id.* ¶ 50 ("ITV USA is the website directed by Plaintiff Shahidullah."). According to publically available documents, that web site was created January 10, 2016. *See* Licker Aff., Ex. D (Domain Registration Report).  The website that Plaintiffs claim was only recently created, https://dawahusa.org, serves primarily to channel visitors to the ITVUSA.tv site.

Defendant Shankar is a reporter working for the Investigative Project on Terrorism ("IPT"). IPT has not been sued here.  On August 9, 2019, IPT published Ms. Shankar's article (the "Article") entitled "NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side." Compl. ¶¶ 3 & Ex. A.  The burden of the Article is the apparent contradiction between Shahidullah's much nurtured public persona as a moderate who strives to bring competing viewpoints together and the radical positions taken on the Website that Shankar thought Shahidullah ran.  *Id.* & Ex. A.  Although Plaintiffs refer to other postings and disseminations of the Article, they do not allege that Defendant was responsible for those postings or further distributions, making them irrelevant.  *Haefner v. N.Y. Media*, 27 Misc. 3d 1208(A), 2009 N.Y. Misc. LEXIS 3641, at *7 (Sup. Ct. N.Y. Cnty. 2009) ("The initial publisher of libelous material cannot be held liable for injuries arising from its subsequent republication

absent a showing that it 'approved or participated in some other manner in the activities of the third-party republisher.'" (quoting *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 540 (1980))).

Plaintiffs make the conclusory assertion that "[t]he Article contained several false and defamatory statements." Compl. ¶ 25. In fact, the Complaint identifies only one allegedly false statement: that Shahidulla is responsible for the content at www.dawahusa.com. *Id.*, *passim.* What Shankar reported as appearing on the web site does, in fact, appear on the web site, and Plaintiffs do not aver otherwise. The sole issue is whether Shahidullah and Dahwah USA, Inc. are responsible for that content.

According to Plaintiffs, Shankar failed to take steps to determine the ownership of the Website: failed to reach out to Shahidullah, failed to reach out to the Website, and failed to track down the registration date of the Website and compare it to the date of incorporation of Dawah USA, Inc. *Id.* ¶¶ 5, 33, 34, 35. None of that is relevant, but in fact Shankar did reach out to Shahidullah (twice) and the Website. Licker Aff., Exs. E, F. Although Plaintiffs suggest that a review of the Website would have clarified its ownership, Compl. ¶ 31 ("Defendant Shankar could have discovered this information upon a simple review of the website."), Plaintiffs do not point to any specific content posted on the Website that would show that it was not owned by Shahidullah and thus would have alerted Shankar to her mistake.[3]

As discussed below, Plaintiffs' conclusory claims of lack of diligence are irrelevant to malice, but those claims are contradicted by the very averments in which they are set forth. Plaintiffs claim starkly that

> Notably, Ms. Shankar did not speak with Plaintiffs to inquire about the www.DawahUSA.com website prior to publication. If Ms. Shankar had informed Plaintiffs that she was writing about a website entitled

---

[3] The suggestion that Shankar did not review the website is absurd, given the content of the Article.

www.DawahUSA.com, Plaintiffs would have immediately notified her that
they do not have a website for Dawah USA Inc. and that they do not operate
www.DawahUSA.com.

*Id.* ¶ 5.  The Article, which the Court may properly consider on a motion to dismiss, makes clear

that Shankar <u>did</u> reach out to Shahidullah.  *See* Compl. Ex. A at 1.  Plaintiffs know that Shankar

<u>did</u> reach out to Shahidullah, spoke to him, told him she was writing about his web site, and he

nonetheless failed to correct her.  Plaintiffs allege that "Defendant has represented that she

briefly asked Imam Shahidullah to talk[,]" *id.* ¶ 33, but they do not supply the referenced

document in which the representation was made, which would reveal their mischaracterization of

the conversations.  Ms. Shankar's sworn statement, setting forth what actually happened on the

calls (there were two of them), is submitted herewith as Licker Aff., Ex. E.

Moreover, although Plaintiffs aver that "Defendant did not speak with the only contact

that is listed on the dawahusa.com website," Compl. ¶ 33, Plaintiffs neglect to point out that the

only contact information appearing on the site is an email address (there is no phone

information). *See* http://www.dawahusa.com/contactus.shtml.  They do acknowledge that

Shankar sent an email to the email address supplied on the Website, but while Plaintiffs

(mis)characterize the email, they do not attach it to the complaint.  The email is submitted

herewith as Licker Aff., Ex. F.  Rather than contain "gotcha questions," as alleged in the

Complaint (*see id.* ¶ 33), the email clearly reflects Shankar's belief that the Website was run by

Shahidullah, is addressed to Shahidullah, refers to and thereby corroborates the two

conversations she had with Shahidullah, and is entirely respectful and professional.  Once again,

this Court need not restrict its attention to Plaintiffs' mischaracterization of the email but can

consider the contents of the actual email, since Plaintiffs rely on it.  *See* Licker Aff., Ex. F.

Plaintiffs aver that on or about March 5, 2020, almost seven months after publication, Shahidullah researched how to contact Shankar and IPT, and sent a tweet to Shankar.[4] *Id*. ¶¶ 49, 50.  Given the totality of the circumstances, Shankar had reason to doubt the tweet and block the sender.

Most significantly, however, Plaintiffs aver that Shahidullah's tweet provided Shankar with actual knowledge of the falsehood.  *Id*. ¶¶ 8 (" For seven months, though Ms. Shankar and the Investigative Project on Terrorism had actual knowledge that Plaintiffs had nothing to do with www.DawahUSA.com, Ms. Shankar and IPT kept the defamatory article on the IPT website."); 36 ("Even when Defendant Shankar and IPT had actual knowledge that the Article was inaccurate, they declined to remove it and kept the Article on the IPT website for another seven months.").  As set forth below, although Plaintiffs try to raise a handful of circumstances that they urge indicate knowing falsity or reckless disregard for the truth (none do), their primary malice argument is that the Shahidullah tweet provided actual knowledge of the Article's flaw and the failure to retract and correct at that point constitutes defamation.  The argument is dead wrong.

Thirteen months after publication of the Article, CAIR, purporting to represent Plaintiffs, sent a cease and desist letter to IPT.  Once again, CAIR refers to the letter in the Complaint (¶¶ 36, 53) but does not attach it.  It is submitted herewith as Licker Aff., Ex. G.  In contradistinction to Shahidullah's tweets, the CAIR letter draws the distinction between Shahidullah's then-recently established website [www.dawahusa.**org**](www.dawahusa.org)  and the Website of unknown ownership, [www.dawahusa.**com**](www.dawahusa.com).  IPT's general counsel, Richard Horowitz, responded

---

[4] The IPT website sets forth a telephone number, a mailing address, and an email address. [https://www.investigativeproject.org/contact.php](https://www.investigativeproject.org/contact.php)

to the letter in writing.  Once again, CAIR makes reference to the response, Compl. ¶¶ 4, 10, 54, mischaracterizing it, but does not supply it.  It is Licker Aff., Ex. H.  Upon review of the CAIR letter and the facts presented therein, IPT posted the following correction and retraction on its website:

> On Aug. 9, 2019, the Investigative Project on Terrorism published a story, "NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side" referring to Muhammad Shahidullah. In it, we incorrectly connected Muhammad Shahidullah to this website DawahUSA.com. In fact, Mr. Shahidullah's website is DawahUSA.org. We regret the error.

Compl. ¶ 55; *see* https://www.investigativeproject.org/8031/ny-imam-active-in-interfaith-work-disseminates.

Notwithstanding that IPT did exactly as requested by CAIR, CAIR, purportedly on behalf of Plaintiffs, nonetheless commenced suit.  It filed first in the Eastern District of New York, naming Ms. Shankar as well as two IPT entities.  Licker Aff., Ex. A.  When Defendants' counsel pointed out that that Court did not have jurisdiction over any of the defendants, CAIR withdrew its complaint and commenced a new action against the three defendants in this District.  *Id.*, Ex. B. When Defendants' counsel sought leave to make this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Plaintiffs amended their complaint to remove the two entities.

## ARGUMENT

### THE COMPLAINT HEREIN FAILS TO STATE A CLAIM AND IS OFFERED BY PERSONS LACKING STANDING AND SHOULD BE DISMISSED

### I.  PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR DEFAMATION

Fed. R. Civ. P. 12(b)(6) permits a defendant to move to dismiss for "failure to state a claim upon which relief can be granted[.]"  To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly*

expounded the pleading standard for all civil actions . . . ." (internal marks and citation omitted). To meet this standard, the complaint must include "enough factual matter (taken as true) to suggest" a cognizable cause of action.  *Twombly*, 550 U.S. at 556.

### A.     New York Law Applies

The law of the jurisdiction in which a tort occurred applies.  The location of the tort is where the damage is felt – that is, in this case, where the Plaintiff resides: New York, since Plaintiffs reside in New York. *See, e.g., Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 699 (D. Md. 2011).

#### 1.     Elements of Defamation

Under New York law, defamation is the publication of an unprivileged, defamatory false statement, about the Plaintiff, made with the requisite level of fault, that either causes special harm or constitutes defamation per se. *Peters v. Baldwin Union Free Sch. Dist*., 320 F.3d 164, 169 (2d Cir. 2003); *Dillon v. City of York*, 261 A.D.2d 34, 38 (1st Dep't 1999).  On this motion, Defendant argues that Plaintiffs have failed to allege facts proof of which would show the requisite fault.

#### 2.     Burden is on the Plaintiff

The burden of pleading and proof is, of course, on the Plaintiff.  The nature of that burden changes depending on the characteristic of the plaintiff and the subject matter of the publication at issue.  In addition to the elements listed above, a public figure plaintiff must prove, by clear and convincing evidence, that the statement at issue is false and was made with actual malice, that is "with knowledge that the statement was false or with reckless disregard of whether it was false or not."  *DiBella v. Hopkins*, 403 F.3d 102, 110-11 (2d Cir. 2005) (internal marks and citation omitted).  That standard requires more than a preponderance of the evidence but less than reasonable doubt. *Yiamouyiannis v. Consumers Union,* 619 F.2d 932, 940 (2d Cir. 1980). A

plaintiff who is a private individual involved in a matter of public concern must establish his claim by a preponderance of the evidence. *See Fairley v. Peekskill Star Corp.*, 83 A.D.2d 294, 303 (2d Dep't 1981).

**B.     Plaintiffs Are, at Least, Limited Purpose Public Figures**

In defamation cases, there are two types of public-figure plaintiffs:  One is a person of "such pervasive fame or notoriety" that he becomes a "public figure for all purposes and in all contexts," and the other is a person who "injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *James v. Gannett*, 40 N.Y.2d 415, 421-22 (1976); *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136 (2d Cir. 1984).  The latter group are "limited purpose public figures."  *Lerman, supra*, 745 F.2d at 136. Public figures have included religious groups. *Holy Spirit Ass'n v. Sequoia Elsevier Publ'g*, 4 Media L. Rep. 1744, at 1 (Sup. Ct. N.Y. Cnty. Oct. 26, 1978).

Plaintiffs are clearly, at the very least, limited purpose public figures.  Although Plaintiffs have become more muted as the iterations of their complaint are refined in response to Defendant(s) arguments (*see, e.g.,* Compl., *Shahidullah v. Investigative Project on Terrorism Found.*, No. 1:20-cv-05300-AMD-SJB (E.D.N.Y. Nov. 2, 2020) at Exs. A-C (Dkt. Nos. 1-1 – 1-3)), the current version of the complaint makes clear that both Plaintiffs have very public personas, public missions, and a public following.  Compl. ¶¶ 44, 45.  Shahidullah's online biography contains the following statements (among many others):  "At present he is serving as an [sic] president of interfaith center of south Asia and Assistant Professor of Jagannath University. However, Shahidullah is the Director of ITV, a New York based American Television Channel, and Consultant of Daily Alokito Bangladesh as well."  *Imam Muhammad*

*Shahidullah*, Inst. for Peace & Leadership, http://www.peaceandleadership.org/founder-emeritus/imam-muhammad-shahidullah/

There is, however, no better proof that Plaintiffs are public figures than the anecdote reported at Compl. ¶ 46. That a print shop owner and a journalist would engage in a debate about revelations in the press regarding the character of an unrelated third party – Shahidullah – is the very definition of a public figure.

## C.    The Article's Topic is a Matter of Public Concern

Once again, the averments in the Complaint leave no doubt that the subject of the Article is a matter of public concern. Plaintiffs identify numerous organizations and commentators who have strong opinions about IPT's statements about Islamic groups and individuals. Compl. ¶¶ 21, 22, 23. Needless to say, the opinions provided by CAIR are all negative. IPT itself has provided a contrary voice on its web site, referring to a number of favorable public comments on the work it does. *See* https://www.investigativeproject.org/about.php. Regardless of the opinion, clearly the work IPT does, and the subject of the Article, is the subject of much concern by the public.

## D.    In Either Case, Plaintiffs Must Allege and Prove Actual Malice

The First Amendment requires that a public figure establish by clear and convincing evidence that the publication was made with "actual malice." *N.Y. Times v. Sullivan*, 376 U.S. 254, 285-86 (1964); *Mahoney v. Adirondack Publ'g*, 71 N.Y.2d 31, 35-36, 39 (1987). New York law requires that a plaintiff asserting a claim for defamation based on speech on matters of public interest or concern, regardless of the plaintiff's status, must also meet this exacting standard. *See* N.Y. Civ. Rights Law § 76-a. Thus, in order to survive a motion to dismiss, Plaintiffs must plead facts to show that the subjective state of mind of the Defendant <u>at the time of publication</u> was that the Defendant either believed the statement was false or published it with reckless disregard

for the truth, *i.e.*, had a high probability of awareness that the statement was false. *Biro v. Conde Nast*, 807 F.3d 541, 544-46 (2d Cir. 2015); *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 379-81 (1977).

Even if properly alleged, careless reporting or a failure to investigate is not sufficient. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688 (1989) ("failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard"); *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103 (1st Dep't 2014) (carelessness); *Freeman v. Johnston*, 84 N.Y.2d 52, 57-58 (1994) (failure to investigate); *Suson v. NYP Holdings, Inc.*, 19 Misc. 3d 1116(A) , 2008 N.Y. Misc. LEXIS 1939, at *27-28 (Civ. Ct. N.Y. Cnty. Mar. 31, 2008) (failure to investigate). Nor does ill will toward plaintiff establish actual malice. *Gross v. N.Y. Times Co.*, 281 A.D.2d 299, 299 (1st Dep't 2001) (fact that some of defendant's sources may have borne ill will toward plaintiff is not probative of actual malice).

### E. Plaintiffs Have Failed to Allege Facts the Proof of Which Would Demonstrate Actual Malice

Plaintiffs throw a potpourri of allegations aimed at fault, but none of them are legally sufficient. The conclusory statements are probative of nothing. Allegations regarding what Defendant could have done but allegedly did not are beside the point, and demonstrably false based on evidence cognizable by the Court on this motion. Plaintiffs base their actual malice argument primarily on the fact that Shahidullah sent Defendant a tweet almost seven months after publication claiming that her Article was wrong. Significantly, however, fault is measured at the time of publication, not seven months or 13 months later. Even if the tweet were relevant, Defendant was not obliged to credit that tweet, and there was much about it that gave rise to doubt. Plaintiffs admit that Defendant did not have what they term "actual knowledge" until

12

seven months after publication, and while Defendant takes issue with that, the admission is enough to mandate dismissal of the Complaint.

### 1.   Plaintiffs' conclusory allegations should be disregarded

The only averments in the Complaint that go to Defendant's state of mind at the time of publication are nothing more than conclusory allegations without provision of any factual support whatsoever.  *See* Compl. ¶¶ 65 (stating, without any factual allegation, "At the time the Article was published Defendant knew the Article was false or, at a minimum, published the Article with reckless disregard for the truth or falsity of the statements it contained."); 66, 67 (each claiming that "Defendant acted with knowledge or reckless regard as to the falsity of the article" [sic] giving a supposed motive to do so but offering no facts to support that Defendant acted with the required fault); 76 (stating in full, "Shankar made the statements either knowing they were false, having serious doubts about their truth, or with reckless disregard for their truth or falsity.")

All of these conclusory allegations, bereft of factual support, provide no basis to sustain the Complaint. *Huizenga v. NYP Holdings, Inc*., 2019 U.S. Dist. LEXIS 65059, at *11 (S.D.N.Y. Apr. 16, 2019) (conclusory allegations of actual malice with no supporting facts insufficient).

### 2.   Plaintiffs' allegations regarding what Defendant could have done to avoid mistake do not establish actual malice

As noted above, carelessness or lack of investigation do not establish actual malice. Defendant has to be shown to have known that what she reported was false or recklessly disregarded the truth.  Plaintiffs' opinion that there were additional steps that Defendant could have taken, but did not, does not establish actual malice.  *See Freeman*, 84 N.Y.2d at 58 (citing *Harte-Hanks Commc'ns*, 491 U.S. at 688, 692).  And with regard to the most pronounced effort – contacting Shahidullah – the averment is demonstrably false.  *See* Compl. ¶ 33.

Starkly, Plaintiffs allege that "Notably, Ms. Shankar did not speak with Plaintiffs to inquire about the www.DawahUSA.com website prior to publication. If Ms. Shankar had informed Plaintiffs that she was writing about a website entitled www.DawahUSA.com, Plaintiffs would have immediately notified her that they do not have a website for Dawah USA Inc. and that they do not operate www.DawahUSA.com."  Compl. ¶ 5.  As Plaintiffs acknowledge elsewhere, *see id.* ¶ 33, Shankar "represented that she briefly asked Imam Shahidullah to talk."  In fact, the representation to which Plaintiffs point are sworn statements – both in a declaration and at deposition requested and conducted by CAIR – in which she stated that she talked to Shahidullah twice at her initiation, she told him that she was writing about his web site dawahusa.com, and he never told her that it was not his web site.[5]  Licker Aff., Ex. E. In any event, had Shankar failed to reach out to Shahidullah, it would not have evidenced actual malice.

Plaintiffs also claim that Shankar failed to "speak with the only contact that is listed on the dawahusa.com website."  Compl. ¶ 33.  Plaintiff does not reveal that the only contact information appearing at that Website is an email address; there is no telephone number.  *See* http://dawahusa.com/contactus.shtml.  They acknowledge that Shankar emailed the web site but mischaracterize the contents of the email and fail to attach it to the Complaint.  *See* Licker Aff., Ex. F.  Contrary to the mischaracterization supplied by Plaintiffs, the email is thoughtful, professional, and very much to the point.

Plaintiffs suggest that had Shankar visited the dawahusa.com site, she would have seen that it makes no reference to Dawah USA, Inc. or Shahidullah.  Compl. ¶ 31.  The site does not

---

[5] Plaintiffs, who know what happened on these calls, mischaracterize the calls.  The suggestion that a seasoned reporter would have the subject of an article on the phone and <u>not</u> reveal the article's point and seek a statement is absurd.

refer to Shahidullah, but each page displays in large letters the words Dawah USA.  It certainly is not uncommon to refer to an entity without including the company suffix.  The notion, however, that Shankar wrote an article filled with descriptions of and quotations from the dawahusa.com site without visiting is not plausible.  *See Twombly*, 550 U.S. at 570.

Finally, Plaintiffs suggest that, had Shankar better investigated the provenance of the dawahusa.com site, she would have discovered that it was registered nine years before Dawah USA, Inc. was formed.  *Id.* ¶ 34.  Of course, that fact would be dispositive of nothing.  One can register a web site without forming a corporation.  In fact, Shahidullah's site itvusal.tv was registered a year before Dawah USA, Inc. was formed.  Licker Aff., Ex. D.  All of these points are irrelevant, however, since none of them establish actual malice.

### 3.  Plaintiffs' post-publication communications are irrelevant to actual malice

Plaintiffs admit repeatedly that Defendant did not have "actual knowledge" that Plaintiffs did not own or run dawahusa.com until March 5, 2020, almost seven months after publication, when Shahidullah tweeted.  *See* Compl. ¶¶ 7, 8 (Shahidullah told Defendant that he did not run the site, yet "For seven months, though Ms. Shankar . . . had actual knowledge that Plaintiffs had nothing to do with www.DawahUSA.com, Ms. Shankar and IPT kept the defamatory article on the IPT website."); 36 ("Even when Defendant Shankar and IPT had actual knowledge that the Article was inaccurate, they declined to remove it and kept the Article on the IPT website for another seven months."); 65 ("After Ms. Shankar had formal notice from Plaintiff—and therefore knowledge—that the Article was false, Ms. Shankar not only failed to remedy the falsehoods of the Article but instead took the deliberate action of blocking Plaintiff on Twitter.").

The corollary to those admissions is that Plaintiffs admit that Defendant did <u>not</u> know that the statement was false at the time of publication.  That admission is fatal to their claim.

> i.  Malice is determined at the time of publication

As noted above, the case law is clear that actual malice – knowledge – is determined at the time of publication.  *Rinaldi*, 42 N.Y.2d at 377-79, 382; *Herbert v. Lando*, 781 F.2d 298, 309 (2d Cir. 1986) ("inaccuracies brought to the attention of the publisher after publication are not relevant to the publisher's state of mind before publication.").  The only allegations in the complaint regarding Defendant's state of mind at the time of publication are the conclusory allegations addressed above, which carry no weight.

> ii.  Defendant need not rely on Plaintiffs' communications seven months after publication

Moreover, Defendant was not obliged to believe the tweet supposedly from Shahidullah, and she had many reasons not to.  It came over social media when such communications are usually had over more formal channels.[6]  The Twitter message bore the handle @itvusanews and although the message purported to be from Shahidullah, anyone could have so represented.  The syntax of the communication itself was strained, to say the least.  Compl. ¶ 50 ("My Name is Muhammad Shahidullah.  I want to talk with you about Dawah webswite.  This is not belong us." [sic]).  Most importantly, the message was contradictory of Shankar's prior communications with Shahidullah in which (a) she was confident of the identity of the person communicating with her (since she initiated the calls) and (b) Shahidullah, informed of Shankar's intent to write an article about Shahidullah's Website dawahusa.com, tacitly confirmed her premise by failing to correct it.  Licker Aff., Ex. F.[7]

---

[6] Plaintiffs obviously anticipated this point and thus plead that Shahidullah researched "the ways he could contact Ms. Shankar and IPT" and ultimately used Twitter.  Compl. ¶¶ 49, 50.  What Plaintiffs do not reveal is that the IPT web site shows a telephone number, mailing address, and email address by which to contact IPT.  *See* https://www.investigativeproject.org/contact.php

[7] It bears mention that Plaintiffs have pled no facts to show that they do not run dawahusa.com. The only support for that claim are Plaintiffs' own conclusory, unsworn statements.

    4.  <u>Under these circumstances, Shankar's reporting, even if wrong, was</u>
        <u>reasonable and certainly not knowingly wrong or reckless</u>

Accepting the well pled facts set forth in the Complaint as true, including facts set forth in documentary and other evidence attached to or referred to in the Complaint, Shankar (a) spoke twice to Shahidullah pre-publication, at her initiative, and he failed to deny ownership of dawahusa.com; (b) sent an email to the Website requesting pertinent information but received no response; (c) saw that the Website URL mirrored the name of Shahidullah's organization; (d) saw that each page of the web site referred to Dawah USA; (e) did not obtain actual knowledge of her mistake until at best seven months after publication, and then in a manner that casts doubt on the credibility of the information; (f) upon receipt of the cease and desist letter immediately took down the Article; and, therefore (g) did <u>not</u> know that what she published was false when she published it.  Similarly, given the litany recited immediately above, the allegations in the Complaint show that Shankar acted thoroughly, thoughtfully, and competently – most certainly not recklessly.  Nonetheless, Plaintiffs attempt to piece together crumbs to try to manufacture some evidence of actual malice.  They fail.

       Plaintiffs lean heavily on Richard Horowitz's response to CAIR's cease and desist letter to try to manufacture some evidence of malice.  Although Plaintiffs refer to CAIR's cease and desist letter and Horowitz's response, they attach neither.  As a result, regrettably, Plaintiffs have mischaracterized the communications.

       In his response to CAIR's cease and desist letter, Horowitz recounts that CAIR claimed that Shahidullah did not run dawahusa.<u>com</u> but rather had fairly recently established dawahusa.<u>org</u>.  He then states, "Upon review we have concluded that your client's website is indeed <u>www.dawahusa.org</u> and not <u>www.dawahusa.com</u>. We have therefore taken down our August 9, 2019 article and in its place posted a retraction and will notify other websites who

17

have posted or have referred to our article of this mistake."  Licker Aff., Ex. H.  Plaintiffs claim

that Horowitz's reference to "upon review" means that there was no review of the Website

previously.  Compl. ¶ 4 ("Ms. Shankar and IPT indicate they were able to realize this error 'upon

review' of the website, suggesting that such a review never occurred prior to the publication of

such a prejudicial, inflammatory, and defamatory article.").

     The notion that Shankar wrote the Article, describing and quoting from the

dawahusa.<u>com</u> Website, without reviewing the Website is ludicrous.  The notion that Shankar

wrote the Article without reviewing the dawahusa.<u>org</u> website is tautological – according to

Plaintiffs, the website did not exist at the time of publication of the Article.  Horowitz was

clearly referring to his review of the CAIR letter and the positions taken therein, and his letter is

no evidence of actual malice at all.

     Similarly, Plaintiffs misrepresent another portion of Horowitz's letter and try to use that

mischaracterization to manufacture evidence of actual malice.  After announcing the retraction,

Horowitz devotes the rest of his two page letter to a discussion of IPT's belief that the

dawahusa.<u>org</u> site, which Horowitz characterizes as Shahidullah's "real" website, has content

that, in the opinion of IPT, is also "extremist," providing and discussing four categories of

examples.  After providing those examples, Horowitz concludes, "IPT therefore retains the right

to publish its findings about the connections of your client to **<u>this</u>** radical material and I invite

you to contact me should you feel we are in error."  Licker Aff., Ex. H at 2 (emphasis added).

Without supplying the actual letter, Plaintiffs crop a quote to make a disingenuous (and

somewhat nonsensical) argument.  They allege

> Ms. Shankar, through counsel, maintained in communication to Plaintiffs that
> IPT 'retains the right to publish its findings about the **connections of [Plaintiff
> Shahidullah]' to 'radical material.'** Plaintiff Shahidullah perceives this as a
> threat, and views it as further evidence that the publication of the August 9,

> 2019 article was not done out of careless error but is part of a deliberate, malicious, and targeted effort to tarnish his reputation, interfaith work, and career of contributions to New York City and the Muslim community.

Compl. ¶ 10 (emphasis added).

It is difficult to divine Plaintiffs' logic, but it is easy to see the misrepresentation. Horowitz's statement clearly is nothing more than a reservation of rights, despite the correction and retraction, to publish future articles regarding Shahidullah and his conduct based on the information set forth on the dawahusa.org website. It is not a threat or evidence of malice, but rather it is careful lawyering. By omitting the word "this," which clearly referred to the four categories of examples of content on dawahusa.org, Plaintiffs seem intent on suggesting that Horowitz, having "giveth" the retraction with one hand, threatens to "taketh away" with the other. That reading is nonsense, clearly depends on a misrepresentation of the communication, and does not, even if Plaintiffs' mischaracterization were true, evidence actual malice – knowing falsity or reckless disregard for the truth.

Nor does the fact that Plaintiffs can speculate about Defendant's motive to misrepresent facts about Shahidullah's connection to dawahusa.com evidence actual malice. Plaintiffs allege, at Compl. ¶ 66, "Defendant acted with knowledge or reckless regard [sic] as to the falsity of the article, among other reasons, because IPT's reason for existing is to accuse Muslims of being extremists who are tied to terrorism." They also allege, at *id.* ¶ 67, "Defendant acted with knowledge of reckless regard [sic] to the falsity of the article, among other reasons, because IPT's fundraising depends on telling donors they are in imminent danger from Muslims." The allegations are not facts but rather represent Plaintiffs' speculation (and likely projection) as to what might motivate Defendant[8] to misrepresent facts. The allegations carry no weight.

---

[8] Throughout the Complaint, Plaintiffs use IPT and Defendant (or Shankar) and occasionally, Emerson, interchangeably, albeit without justification. Shankar and Emerson work for IPT; they

Plaintiffs make no credible factual allegation to support the notion that Defendant acted with actual malice.  Rather, her conduct, as confirmed by allegations in the Complaint and documents or events referred to in the Complaint or susceptible of judicial notice, was entirely reasonable and professional, and certainly made without knowledge of falsity or reckless disregard for the truth.  The smoke and mirrors attempt to turn Mr. Horowitz's entirely reasonable letter into some form of evidence of actual malice fails, even when boosted by misrepresentation.  The Plaintiffs are clearly public figures, having very much inserted themselves into the debate over American-Islamic relations.  Thus, in order to sustain their Complaint, Plaintiffs must allege facts proof of which would evidence actual malice.  They do not, and, accordingly, the Complaint must be dismissed.

## II. THE COMPLAINT IS OFFERED BY CAIR, WHO IS WITHOUT STANDING, AND IS CHAMPERTOUS

There is an oddity to this case that may seem minor and overly formalistic, but Defendant urges that it is not.  In the usual construct, a complaint is offered ("respectfully submitted") by counsel, on behalf of the plaintiff(s), or by the plaintiff(s) *pro se.*  Local Rule 102(1)(a)(i), entitled "Signatures, Identifying Information, and Proof of Service," states, "When a party is represented by counsel, the Clerk shall accept for filing only documents signed by a member of the Bar of this Court whose appearance is entered on behalf of that party." Thus, ordinarily, a complaint closes by reciting that it is respectfully submitted by counsel, on behalf of plaintiff(s).

---

do not constitute IPT.  At her deposition in this action, Shankar was asked who owns IPT Research Group, and she responded that Emerson is the owner.  The question was objectionable as beyond the limited scope of the discovery, but the answer was wrong.  IPT Research Group is a not for profit corporation and therefore has no owners.  Licker Aff., ¶ 10.  Because CAIR refused to provide a transcript, notwithstanding Shankar's request to review and correct the transcript of her testimony, she has not, without incurring costs, been able to correct that answer.

The complaint herein, however, is not proffered by counsel of record or an unrepresented party. Rather, it is proffered by, and signed on behalf of, CAIR Legal Defense Fund, which, to Defendant's knowledge, is not a law firm. The closing and signature block states (in part):

Respectfully submitted,

CAIR LEGAL DEFENSE FUND

_____/s/Lena Masri_____
LENA F. MASRI (20251)
GADEIR I. ABBAS (20257)*
JUSTIN SADOWSKY (20128)
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

Attorneys for Plaintiffs

It appears, from the face of the Complaint, that the CAIR Legal Defense Fund is pursuing this case on behalf of the Plaintiffs.  The CAIR Legal Defense Fund does not have standing, because it is not the subject of allegedly defamatory utterance and therefore cannot have suffered any injury in fact.  *See Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82, 86-87 (2016) (ruling that statements must be "of and concerning" the plaintiffs); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (requiring "an injury in fact, … fairly traceable to the challenged conduct of the defendant, and … likely to be redressed by a favorable judicial decision"). Standing bears on subject matter jurisdiction and therefore cannot be waived or conferred by agreement.  *Spokeo*, 136 S. Ct. at 1547 ("The doctrine [standing] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong").

It might be viewed that CAIR has purchased the right to pursue this claim by supplying legal counsel to Plaintiffs.  If that is the case, then the suit is champertous and should be

21

dismissed. New York's prohibition of champertous actions is bottomed on Judiciary Law § 489, which provides in pertinent part:

'No person . . . shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon."  N.Y. Jud. Law § 489(1), as quoted in *Justinian Capital SPC v. WestLB AG*, 43 Misc. 3d 598, 599-600 (Sup. Ct. N.Y. Cnty. 2014). As Justice Kornreich remarked,

> the champerty inquiry turns on the difference "between one who acquires a right in order to make money from litigating it and one who acquires a right in order to enforce it." *Trust for the Certificate Holders of the Merrill Lynch Mortg. Invs., Inc. Mortg. Pass-Through Certificates, Series 1999-C1 v. Love Funding Corp.*, 13 N.Y.3d 190, 200 (2009) (*Love III*).) The latter is permissible; the former is not. (See *Justinian Capital SPC v WestLB AG*, 37 Misc. 3d 518, 525 (Sup. Ct. N.Y. Cnty. 2012) (*Justinian I*).)

Id. at 600.

In *Love III*, 13 N.Y.3d 190 (2009), the Second Circuit certified three questions to the Court of Appeals with regard to New York's champerty statute. The questions, and the facts present in *Love III*, are not relevant to this case. In dicta, however, the Court summarized the purpose of the law:

> In short, the champerty statute does not apply when the purpose of an assignment is the collection of a legitimate claim. What the statute prohibits, as the Appellate Division stated over a century  ago, "is the purchase of claims with the 'intent and for the purpose of bringing an action' that [the purchaser] may involve parties in costs and annoyance, where such claims would not be prosecuted if not stirred up . . . in [an] effort to secure costs" (*Wightman v Catlin*, 113 AD 24, 27, 28 (2d Dept 1906)).

13 N.Y.3d at 201. In modern application, the statue's reach is broader than an effort to secure

costs, but the burden of the statute is as announced by the Second Department in 1906:

prohibition of the purchase of most interests in lawsuits.[9]

It appears that purchasing an interest in a lawsuit that they could not pursue on their own

is precisely what CAIR did by providing counsel and offering the Complaint in their own name.

The conduct in which CAIR and Plaintiffs engaged entirely fits within the statute's prohibition.

CAIR did "buy ... a claim . . . with the intent and for the purpose of bringing an action or

proceeding thereon."  A champertous action cannot be maintained. This champertous action must

be dismissed.

---

[9] The exception set forth in Judiciary Law § 489(2) for the purchase of "bonds, promissory notes, bills of exchange and/or book debts" having a value of more than $500,000 is inapplicable here because CAIR did not buy any of the specified instruments.

## CONCLUSION

Among its many shortcomings, the Complaint herein fails in light of the absence of any alleged facts the proof of which would evidence actual malice – the level of fault here that Plaintiff must allege and ultimately prove by clear and convincing evidence.  Moreover, given the odd dynamic between Plaintiffs and CAIR, wherein the Complaint is submitted by CAIR notwithstanding that CAIR has no standing to do so, the Complaint should be dismissed on standing grounds or as champertous.  Given that this is the third time that CAIR has tried to articulate a cause of action, and still has offered no facts that would plausibly suggest that Defendant acted with actual malice, Defendant respectfully requests that this Court dismiss the Complaint with prejudice.

Dated: April 16, 2021

*/s/ Eugene Licker*
Eugene R. Licker (pro hac vice)
BALLARD SPAHR LLP
1675 Broadway, Floor 19
New York, NY 10019
Telephone: (646) 346-8048
Facsimile: (212) 223-1942
lickere@ballardspahr.com

*/s/ Matthew Lamb*
Matthew D. Lamb (Bar No. 20203)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, D.C. 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
lambm@ballardspahr.com

*/s/ Richard Horowitz*
Richard Horowitz (pro hac vice)
845 Third Avenue, 6th Floor
New York, NY 10022
Telephone: (212) 829-8196
Facsimile: (212) 813-3214
rhorowitz@rhesq.com

*Attorneys for Defendants*

24