Exhibit B

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MUHAMMAD SHAHIDULLAH, and | ) | |
| | ) | Case No. |
| DAWAH USA INC., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABHA SHANKAR; | ) | |
| | ) | |
| INVESTIGATIVE PROJECT ON | ) | |
| TERRORISM FOUNDATION; and | ) | |
| | ) | |
| INVESTIGATIVE PROJECT ON TERRORISM | ) | |
| RESEARCH GROUP, INC.; | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

**COMPLAINT AND DEMAND FOR JURY TRIAL FOR DAMAGES**

Plaintiffs Imam Muhammad Shahidullah ("Imam Shahidullah") and Dawah USA Inc. (collectively "Plaintiffs"), by and through their undersigned attorneys, allege as follows on personal knowledge, and on information and belief, for this Complaint against Defendants:

**BACKGROUND**

1.      Plaintiff Imam Shahidullah is a respected Imam (Islamic religious leader) in New York City.  Imam Shahidullah has been targeted by Defendants in an unfounded attempt to smear his reputation and expose him to xenophobic and Islamophobic hatred.

2.      Imam Shahidullah has devoted his career to interfaith efforts and peace advocacy. In 2016-2017, Imam Shahidullah created Dawah USA Inc., a 501(c)(3) public charity devoted to

promoting and developing cooperation and understanding among people of diverse faiths in general and Muslims in particular.

3.     In an August 9, 2019 article (the "Article") on their website, Defendants wrongfully accused Plaintiffs of operating a so-called "extremist" website www.dawahusa.com and publishing the teachings of a deceased Al-Qaeda cleric, among other highly inflammatory and unfounded statements. Defendants concluded the Article stating: "The fact that a hard-core Islamist operating under the guise of an interfaith worker is embraced by law enforcement is concerning and highlights the rising danger from Islamist wolves masquerading in sheep's clothing."

4.     Defendants have, since being contacted by Plaintiffs' counsel on September 28, 2020, taken down the Article, replacing it with a statement addressing their mistake. Nonetheless, Defendants maintain on their website at the same URL as the original Article the title "NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side."



10/5/2020          NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side :: The Investigative Project on Terrorism

## NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side

*IPT News*
**August 9, 2019**
**https://www.investigativeproject.org/8031/ny-imam-active-in-interfaith-work-disseminates**

**Note to Readers**

On Aug. 9, 2019, the Investigative Project on Terrorism published a story, "NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side" referring to Muhammad Shahidullah. In it, we incorrectly connected Muhammad Shahidullah to this website DawahUSA.com. In fact, Mr. Shahidullah's website is DawahUSA.org. We regret the error.

5.     Defendants do not dispute that they made an "error" and "incorrectly connected" Plaintiffs to what they call an extremist website. In their October 5, 2020 communication to Plaintiffs through counsel, Defendants indicate they were able to realize this error "upon review" of the website,

suggesting that such a review never occurred prior to the publication of such a prejudicial, inflammatory, and defamatory article.

6.     Notably, Defendants did not speak with Plaintiffs to inquire about the www.DawahUSA.com website prior to publication. If Defendants contacted and had informed Plaintiffs that they were writing about a website entitled www.DawahUSA.com, Plaintiffs would have immediately notified Defendants that they do not have a website for Dawah USA Inc.[1] and that they do not operate www.DawahUSA.com.

7.     The Article was maintained for over a year and re-published in several anti-Muslim publications and websites, leading to more than one hundred offensive comments, subjecting Plaintiffs to significant embarrassment, fear of discriminatory targeting, and damage to reputation.

8.     When Plaintiff Imam Shahidullah contacted the Article's author, Defendant Shankar, to inform her that neither he nor Dawah USA Inc. are associated with the website dawahusa.com, Ms. Shankar blocked him on Twitter and did not otherwise respond.

9.     For seven months, though Defendants had actual knowledge that Plaintiffs had nothing to do with www.DawahUSA.com, Defendants kept the defamatory article on its website.

10.    The Article was only removed once Plaintiffs contacted Defendants through counsel.

11.    Defendants, through counsel, maintained in their communication to Plaintiffs that IPT "retains the right to publish its findings about the connections of [Plaintiff Shahidullah]" to "radical material." Plaintiff Shahidullah receives this as a threat, and views it as further evidence that the publication of the August 9, 2019 was not done out of careless error but is part of a deliberate, malicious, and targeted effort to tarnish his reputation, interfaith work, and career of contributions to New York City and the Muslim community.

---

[1] When Defendants published and broadcasted the Article, Plaintiffs did not have a website for Dawah USA Inc.

**THE PARTIES**

12.     Plaintiff Muhammad Shahidullah is an Imam residing in Queens, New York who is active in interfaith outreach and runs a 501(c)(3) public charity titled Dawah USA Inc.

13.     Plaintiff Dawah USA Inc. is a registered 501(c)(3) not-for-profit headquartered and registered in New York.

14.     Defendant Abha Shankar is a researcher for the Investigative Project on Terrorism and author of the Article and defamatory statements therein at issue in this Complaint. Defendant Shankar is a resident of Montgomery County, Maryland.

15.     Defendant Investigative Project on Terrorism Foundation is a non-profit research organization based in Washington, D.C. which claims to be a storehouse of archival data and intelligence on Islamic and Middle Eastern terrorist groups. Defendant Investigative Project on Terrorism Foundation is organized under Delaware law.

16.     Defendant Investigative Project on Terrorism Research Group Inc. is a not-for-profit organization which provides management services to the Investigative Project on Terrorism Foundation.  Defendant Investigative Project on Terrorism Research Group Inc. is organized under Delaware law.

17.     Upon information and belief, Defendants Investigative Project on Terrorism Foundation and Investigative Project on Terrorism Research Group Inc. collectively and jointly own and operate the research group called "The Investigative Project on Terrorism" and its accompanying website www.investigativeproject.org. According to The Investigative Project on Terrorism website, Defendant Investigative Project on Terrorism Foundation is the fund-raising arm for The Investigative Project on Terrorism.

## JURISDICTION AND VENUE

18.     Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over Plaintiff's claims based on the parties' diversity of citizenship and because the amount in controversy exceeds $75,000.

19.     Venue is appropriate in this judicial district, pursuant to 28 U.S.C. § 1391, because this Court has personal jurisdiction over Defendants and by reason of the fact that, among other things, the statements in question were published in this district.

## STATEMENT OF FACTS

20.     The Investigative Project on Terrorism ("IPT") is a research organization which claims to be a storehouse of archival data and intelligence on international terrorist groups. It maintains a website on which is publishes its claims and research.

21.     Upon information and belief, Defendants Investigative Project on Terrorism Foundation and Investigative Project on Terrorism Research Group Inc. collectively and jointly own and operate the research group called "The Investigative Project on Terrorism" and its accompanying website www.investigativeproject.org. According to The Investigative Project on Terrorism website, Defendant Investigative Project on Terrorism Foundation is the fund-raising arm for The Investigative Project on Terrorism.

22.     IPT is a key purveyor of Islamophobic smears against Muslim leaders and institutions throughout the country and has been recognized as such. For example, the Center for American Progress, a public policy research organization, in a comprehensive 130-page report analyzing Islamophobia in the United States, reviewed IPT and concluded that it believed IPT to be a key part of the "the Islamophobia network in America."[2] Additionally, the Southern Poverty Law Center, an authority on the study of domestic hate and terrorism groups, took issue with IPT's characterization

---

[2] Wajahat Ali et al., *Fear, Inc.: The Roots of the Islamophobia Network in America*, CENTER FOR AMERICAN PROGRESS (August 2011), 127.

of data presented to Congress which it viewed as "meant to hype the domestic Muslim threat."[3] IPT's broader agenda provides insight as to the context and intent by which IPT published its statements regarding Plaintiff.

23.     From August 9, 2019 to October 5, 2020, Defendants published an article authored by Defendant Abha Shankar on the IPT website titled "NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side" (the article is hereinafter referred to as the "Article"). A copy of the Article is attached hereto as Exhibit A.

24.     The Article contained several false and defamatory statements.

25.     The Article falsely stated that "Shahidullah also runs a proselytizing website, Dawah USA, that ostensibly seeks to invite people to Islam but in fact serves as a clearinghouse for extremist and Islamist propaganda, the Investigative Project on Terrorism finds."

26.     This assertion that Defendants made in the Article is a factual statement.

27.     The words "proselytizing website" contained a hyperlink to www.dawahusa.com.

28.     Plaintiffs do not "run" the website (www.dawahusa.com) that Defendants linked to in their Article. At the time of the Article's publication, Plaintiff Dawah USA Inc. did not own or operate any website with the words "dawahusa" in the URL address.

29.     Notably, the website www.dawahusa.com makes no mention or reference to Dawah USA Inc. or Imam Muhammad Shahidullah. Defendants could have discovered this information upon a simple review of the website.

---

[3] Robert Steinback, *Steve Emerson, Backing King Hearings, Pushes Misleading Statistic on Muslim Terrorism*, SOUTHERN POVERTY LAW CENTER (Mar. 23, 2011), *available at* https://www.splcenter.org/hatewatch/2011/03/23/steve-emerson-backing-king-hearings-pushes-misleading-statistic-muslim-terrorism.

30.     In the "contact us" page of dawahusa.com, the website includes an email zbm@nyc.rr.com. Similarly, the donation link for dawahusa.com goes to a paypal.com donation screen directing donors to make a donation to zbm@nyc.rr.com.

31.     Upon information and belief, Defendants did not contact and speak with the only contact that is listed on the dawahusa.com website. If Defendants had communicated with zbm@nyc.rr.com prior to publishing the Article, Defendants would have learned that Plaintiffs have no association with the dawahusa.com website.

32.     Moreover, any reasonable researcher (as Defendants describe themselves) would have discovered that the website dawahusa.com was created in 2008, almost a decade before Dawah USA Inc. was established.  Dawah USA Inc. was established in 2017.

33.     The Defendants were aware at the time of publication that Dawah USA Inc. did not exist prior to 2017. In fact, the Article linked to tax records for Plaintiff Dawah USA Inc.

34.     Even when Defendants had actual knowledge that the Article was inaccurate, Defendants declined to remove it and kept the Article on its website for another seven months. Only after Defendants were served with a cease and desist did they take action.

35.     The Article falsely accused Plaintiffs of broadcasting "on the Dawah USA website" "an audio of American-born al-Qaida cleric Anwar al-Awlaki's infamous 2002 "It's a War on Islam" speech."  This factual statement is false and defamatory. Defendants falsely claimed that Plaintiffs are spreading materials or speeches of Anwar al-Awlaki in an attempt to smear and damage Plaintiffs' reputations and harm their interfaith work.

36.     The Article also states that "Shahidullah declined to discuss the content on his website after repeated requests for comment."  His "website" refers to dawahusa.com.  This statement is false as Plaintiff Shahidullah has never owned or operated the website that Defendants claim he refused to discuss.

37.    The Article also falsely states:

a.    "Dawah USA features speeches by Ali al-Timimi, the spiritual leader of the Virginia Jihad Network, a group of 11 men who wanted to train for jihad against U.S. forces after 9/11 with the Lashkar-e-Taiba terrorist group."

b.    "Speeches by al-Timimi's mentor Abu Ameenah Bilal Philips, a Canadian-raised Salafist currently living in Qatar, also are posted on Dawah USA."

c.    "Several recordings by Indian hate preacher Zakir Naik, whose inflammatory speeches have inspired Muslim youth to engage in terrorist acts, also appear on Dawah USA."

d.    "Other Salafi jihadists whose lectures have been published on the website include Ahmed Deedat, Abdul Hakeem Quick, Israr Ahmad, Jamal Badawi, Khalid Yasin, Maulana Syed Abdul Ala Maududi, Siraj Wahhaj, and Yusuf Estes."

38.    The statements recited in paragraph 37 a-d, which are found in the Article, are false and defamatory. Defendants attempt to deceive their audience and the public at large into believing that Plaintiffs distributed the materials cited in the Article. In fact, Plaintiffs have never even heard of Ali al-Timimi, the Virginia Jihad Network., or some of the names mentioned in the Defendants' Article.

39.    The Article falsely attributes the following to Plaintiffs:

Shahidullah's Dawah USA also features an undated, anonymous article, 'Why does Islam degrade women by keeping them behind the veil?,' which argues that Islam and Muslim modesty culture offers a solution to reducing rapes in America.

'Consider a scenario where the Islamic hijaab is followed in America. Whenever a man looks at a woman and any brazen or unashamed thought comes to his mind, he lowers his gaze. Every woman wears the Islamic hijaab, that is the complete body is covered except the face and the hands upto [sic] the wrist. After this if any man commits rape he is given capital

punishment. I ask you, in such a scenario, will the rate of rape in America increase, will it remain the same, or will it decrease?'

'Naturally as soon as Islamic Shariah is implemented positive results will be inevitable,' the article says. 'If Islamic Shariah is implemented in any part of the world, whether it is America or Europe, society will breathe easier. Hijaab does not degrade a woman but uplifts a woman and protects her modesty and chastity.'

It is nearly identical to a 2015 article by Shadab Akram published by Quora.

The notion that Western values empower women is false, the article further claims. 'Western talk of women's liberalization is nothing but a disguised form of exploitation of her body, degradation of her soul, and deprivation of her honour. Western society claims to have 'uplifted' women. On the contrary it has actually degraded them to the status of concubines, mistresses and society butterflies who are mere tools in the hands of pleasure seekers and sex marketeers, hidden behind the colourful screen of 'art and 'culture'.'

40.     The Article falsely stated that Plaintiffs broadcasted and published an article that denounces interfaith outreach as an evil concept contrary to Islam. The false allegations that Plaintiffs would denounce the exact work that Plaintiff Shahidullah has devoted his life to and that Plaintiff Dawah USA Inc. has devoted itself to is absurd and further showcases Defendants' attempts to falsely paint Plaintiffs as hypocritical and to damage Plaintiffs' reputations and work. Specifically, the false and defamatory statements state:

An article, 'Matters Which Nullify Ones Islaam,' on Shahidullah's website denounces interfaith outreach as an 'evil concept' contrary to Islam.

'It is impermissible for any Muslim who believes in Allaah as his Lord, Islaam as his religion and Muhammad … to call towards the evil concept of Interfaith, encourage it, facilitate its conveyance to the Muslims, attend its conventions or belong to any of its clubs or organizations,' it says. It concludes by advising Muslims 'to protect the religion of Islaam, preserve the Islamic creed and protect it against the misguided people

of falsehood and those who share their ideas and beliefs. They
must be aware of 'Interfaith' and its traps.'

41.     The Article concluded stating: "The fact that a hard-core Islamist operating under the
guise of an interfaith worker is embraced by law enforcement is concerning and highlights the rising
danger from Islamist wolves masquerading in sheep's clothing."

42.     Plaintiff Dawah USA Inc. is a 501(c)(3) tax-exempt public charity and has published
none of these materials. Its purpose is to "promote and develop cooperation and understanding
among the people of diverse faiths in general and Muslims in particular." Its projects include interfaith
support and contributing toward a society free of prejudice. At the time of Defendants' publication
of the Article, Plaintiff Dawah USA Inc. did not have a website.  Plaintiff Dawah USA Inc. recently
established its webpage at www.dawahusa.org.  Prior to publication of the Article, Plaintiff Dawah
USA Inc. was not contacted by Defendants to discuss the website dawahusa.com.

43.     Imam Shahidullah is active in interfaith outreach in New York City and has been
recognized for his efforts.  He is the director of ITV USA, an online based Muslim community
channel.  Imam Shahidullah is also the founder and president of Interfaith Center of USA and a
voluntary chaplain for the New York State Chaplain Task Force.

44.     Imam Shahidullah first learned of the Article on or around March 4, 2020, when he
received a phone call from the print shop owner that he and Dawah USA Inc. use for their printing
needs.  The print shop owner called to inform Imam Shahidullah that another customer and journalist
(the "Customer") with Weekly Nobojug, a Bangla news and media website, had advised the print shop
owner to disassociate from and to be careful of Imam Shahidullah because Imam Shahidullah "is
involved with something bad" involving a website.  The print shop owner defended Imam Shahidullah
against the accusations.  The Customer informed the print shop owner to run a Google search of
Imam Shahidullah to find the information for himself. The print shop owner ran a Google search and
found Defendants' Article and the defamatory statements contained therein.

45.     On the phone call between Imam Shahidullah and the print shop owner, the print shop owner began to question Imam Shahidullah about the content in Defendants' Article.  Imam Shahidullah was dumbfounded.  Imam Shahidullah defended himself and his reputation during the call.

46.     When Imam Shahidullah ran a Google search on himself, he found Defendants' Article published and disseminated on more than a dozen websites.  Imam Shahidullah was shocked and immediately worried about his safety, relationships, and reputation, and that his life's work on bringing people of different faiths together would be damaged and permanently ruined and stained by the Article.  He began to suffer from severe anxiety and extreme stress.

47.     After reading the Article, Imam Shahidullah began researching Defendants and on the ways he could contact Defendants to inform them that their statements about him and Dawah USA Inc. were false.

48.     On March 5, 2020, shortly after midnight because Imam Shahidullah could not sleep due to his anxiety and fears, Imam Shahidullah contacted Defendant Abha Shankar on Twitter to inform her that neither he nor Dawah USA Inc. are associated with the website dawahusa.com.  ITV USA is the online television channel directed by Plaintiff Shahidullah, who manages the Twitter username @itvusanews.



49.     Instead of responding or contacting Imam Shahidullah, Defendant Abha Shankar blocked Imam Shahidullah on Twitter.

50.     Imam Shahidullah then proceeded on March 5, 2020, at 9:15 a.m. to send a tweet on Twitter to IPT. Imam Shahidullah identified himself, provided his cell phone and email, and clearly informed Defendants that Plaintiffs have no association with the dawahusa.com website. Imam Shahidullah did not receive a response.



51.     On September 28, 2020, Imam Shahidullah sent, through counsel, a cease-and-desist letter to the Investigative Project on Terrorism, pointing out the false and defamatory nature of the August 9, 2019 article.

52.     In a reply letter dated October 5, 2020, Defendants, through counsel, stated that "upon review we have concluded that your client's website is indeed www.dawahusaw.org [sic] and not www.dawahusa.com. We have therefore taken down our August 9, 2019 article and in its place posted a retraction and will notify other websites who have posted or have referred to our article of this mistake."

53.     Defendants published a "Note to Readers" on their web site admitting that on August 9, 2019, Defendants published a story titled "NY Imam Active in interfaith Work Disseminates

Extremist Propaganda on the Side." In the Note, IPT indicates that it "incorrectly connected Muhammad Shahidullah to this website DawahUSA.com" and that "we regret the error." However, the title on the Defendants' website continues to falsely state "NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side."

54.   The Article and the false and defamatory statements therein were republished in several places and are still maintained on different sites which reveal the impact and harm done to Imam Shahidullah's reputation. For example, the Facebook page for the organization Citizens for National Security, which has nearly half a million followers, maintains a post with excerpts from the IPT piece which has elicited over one hundred comments, several of a highly inflammatory and Islamophobic nature that are now associated with web searches of Imam Shahidullah's name.



55.   As another example, the Twitter page of Amy Mek (@AmyMek) who has more than a quarter million followers and runs an anti-Muslim organization called RAIR Foundation, maintains a post with excerpts from the Defendants' Article.



56.     Ms. Mek's post has been shared or retweeted on Twitter 314 times and has garnered

several highly inflammatory and offensive remarks directed at Plaintiff Shahidullah, including one

commenter who wrote the following: "This son of a bitch [referring to Imam Shahidullah] should be

arrested and, if applicable, deported immediately."



57.     According to Defendant IPT's website, the Article was shared directly from the website to Facebook 340 times. Additionally, the Article through the website was shared 49 additional times onto other platforms.  This data is available at https://www.investigativeproject.org/8031/ny-imam-active-in-interfaith-work-disseminates.



58.     Defendant Abha Shankar also disseminated the Article to her more than 1000 followers on Twitter.  Defendant Shankar continues to keep a post about the Article on her profile at the www.muckrack.com website.   See screenshot taken on November 2, 2020 from Defendant Shankar's profile on Muck Rack:

59.     A simple Google search of "Muhammad Shahidullah Dawah USA" now returns a first page that is littered with Defendants' false article.

60.     Upon information and belief, Defendants disseminated the Article to its e-mail listserv/newsletter which contains thousands of individuals and/or organizations throughout the United States, including individuals and/or organizations in Maryland.

61.     Upon information and belief, Defendants actively disseminated the Article to other anti-Muslim organizations and/or media organizations, including those located or operated in Maryland.

62.     Defendants took steps to ensure that the false and defamatory statements were widely disseminated.

63.     Upon information and belief, Defendants researched, wrote, and edited all or parts of the Article, including the defamatory statements therein that are described throughout the Complaint, while located in the State of Maryland.   Defendants also broadcasted the Article in the State of Maryland.

64.     Plaintiff Shahidullah is not a public figure.

65.     At the time the Article was published Defendants knew the Article was false or, in the alternative, published the Article with reckless disregard for the truth or falsity of the statements it contained. After Defendants had actual knowledge that the Article was false, Defendants kept the Article published unaltered for seven more months.  The Article was not published in innocent error.

66.     Indeed, Defendants demonstrate a continued eagerness to publish disparaging and false claims regarding Imam Shahidullah. Defendants remain, for whatever reason, convinced of its perception of Imam Shahidullah as an "extremist" and seeks to engage in a deliberate, malicious, and targeted effort to tarnish his reputation, interfaith work, and career of contributions to New York City's community.

67.     The false statements contained within the Article are defamation per se because they involved behavior incompatible with the proper conduct of Imam Shahidullah's business, trade or profession of being an interfaith religious leader. The false statements accuse Imam Shahidullah of supporting war crimes and terrorists.

68.     The false statements contained within the Article are defamation per se because they involved behavior incompatible with the proper conduct of Dawah USA Inc.'s business, trade or profession of being not-for-profit organization to bring people of different faiths together through interfaith work.  Dawah USA Inc. is further damaged when its founder and executive officer is falsely maligned by Defendants.

69.     The falsehood caused significant harm to the reputation of Plaintiffs. Imam Shahidullah and Dawah USA Inc. have suffered damage as a result of the false and defamatory statements in the Article in an amount to be proven at trial but in excess of $75,000.

**CAUSE OF ACTION**
**(Defamation)**

70.    The foregoing allegations are repeated and incorporated as though fully set forth herein.

71.    Defendants' statements were defamatory per se.

72.    The plain import of the statements were an attack on the character, reputation, repute, name and status of Imam Shahidullah and are reasonably understood to state that Imam Shahidullah owned and/or operated an extremist website, ran a clearinghouse for extremist propaganda, and is associated with a deceased terrorist and Al-Qaida cleric Anwar al-Awlaki.

73.    The plain import of the statements were an attack on the character, reputation, repute, name and status of Dawah USA Inc. and are reasonably understood to state that Dawah USA Inc. owned and/or operated an extremist website, ran a clearinghouse for extremist propaganda, and is associated with a deceased terrorist and Al-Qaida cleric Anwar al-Awlaki.

74.    Defendants concede that they made the statements and that the statements were false. They admit "upon review" that the statements contained in their article were false. Defendants made the statements either knowing they were false, having serious doubts about their truth, or with reckless disregard for their truth or falsity.

75.    Defendants' statement exposed Imam Shahidullah and Dawah USA Inc. to hatred, xenophobia, Islamophobia, contempt, ridicule, and shame, and discouraged others from hiring, associating, or dealing with him and/or Dawah USA Inc.

76.    As a result, Imam Shahidullah and Dawah USA Inc. have suffered damages in an amount to be proven at trial, including but not limited to, harm to reputation, emotional harm and exposure to contempt, ridicule, and shame.

77.    Imam Shahidullah is not a public figure.

78.    Imam Shahidullah's and Dawah USA Inc's damages exceed $75,000.

79.     Plaintiffs are further entitled to punitive damages in an amount to be proven at trial because in making the defamatory statements identified herein, as evidenced by the context in which Defendants operate their website and face public critique for their role in encouraging Islamophobia, Defendants acted with malice, oppression, or fraud.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

A.      Compensatory damages in an amount to be proven at trial;

B.      Punitive damages;

C.      Award counsel for Plaintiffs costs and attorneys' fees; and

D.      Grant any further relief that this Court deems just and proper.

## JURY DEMAND

NOW COMES Plaintiff, by and through his undersigned counsel, and hereby demands trial by jury.

Dated: December 12, 2020

Respectfully submitted,

CAIR LEGAL DEFENSE FUND

_____/s/Lena Masri_____
LENA F. MASRI (20251)
GADEIR I. ABBAS (20257)*
JUSTIN SADOWSKY (20128)
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

Attorneys for Plaintiffs

*Gadeir Abbas is licensed in VA, not in D.C.  Practice limited to federal matters.

19

_/s/ Ahmed Mohamed_

Ahmed Mohamed*
Carey Shenkman*, Of Counsel
COUNCIL ON AMERICAN-ISLAMIC RELATIONS, NEW
YORK INC. (CAIR-NY)
46-01 20th Avenue,
Queens, NY 11105
(646) 665-7599
ahmedmohamed@cair.com
cshenkman@cair.com

*Pro Hac Applications Forthcoming