# Exhibit G



Council on American-Islamic Relations, New York
46-01 20th Avenue
Astoria, New York 11105
www.cair-ny.org | legal@ny.cair.com | (646) 665-7599

## NOTICE TO CEASE AND DESIST

**September 28, 2020**  **VIA E-Mail**

The Investigative Project on Terrorism (IPT)
Abha Shankar
5614 Connecticut Ave., NW No. 341
Washington, D.C. 20015
stopterror@aol.com

RE: **NOTICE TO CEASE AND DESIST**
**False and Defamatory Article Regarding Muhammad Shahidullah & Dawah USA Inc.**
**File No. 1590**

Dear The Investigative Project on Terrorism (IPT) and Ms. Shankar:

The New York Chapter of the Council on American-Islamic Relations (CAIR-NY), the largest Muslim civil rights and advocacy organization, has been retained by Muhammad Shahidullah ("Mr. Shahidullah") and Dawah USA Inc. We are investigating numerous false and/or baseless statements you have made about Mr. Shahidullah and Dawah USA Inc. in your article entitled "*NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side*" located at https://www.investigativeproject.org/8031/ny-imam-active-in-interfaith-work-disseminates.

**Background on Mr. Muhammad Shahidullah & Dawah USA Inc.**

Mr. Shahidullah is a respected professional in the community and has spent his life building a positive reputation. Mr. Shahidullah is an Imam (Islamic religious leader) within the New York community who has been active in interfaith outreach. His notable duties included speaking to the NYPD, visiting the New York Statehouse in Albany, New York, in April 2019 as part of interreligious delegation, participating in interfaith events organized by New York's 9/11 tribute museum, and attending the U.N. World Interfaith Harmony Week. The New York City Council has cited Mr. Shahidullah as "an outstanding citizen who is worthy of the esteem of both our community and the great City of New York."

Dawah USA Inc. is a registered 501(c)(3) non-profit organization established in 2016 for the promotion of the practice of Islam and to coordinate activities in order to promote peace and prosperity at large. Dawah USA Inc. promotes and develops cooperation and understanding among people of diverse faiths in general, and Muslims in particular. Dawah USA Inc.'s website url is www.dawahusa.org.

**Your Article**

False statements in your Article include, but are not limited to, the following:

- The Article's title: "NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side" and

- "But Shahidullah also runs a proselytizing website, Dawah USA, that ostensibly seeks to invite people to Islam but in fact serves as a clearinghouse for extremist and Islamist propaganda, the Investigative Project on Terrorism finds." [hyperlinks removed]

Moreover, almost every statement in your Article about Mr. Shahidullah and Dawah USA Inc. are misleading, places Mr. Shahidullah and Dawah USA Inc. in a false light and falsely portrays him and Dawah USA Inc. Your entire Article reeks of defamation and defamation by implication.

Your Article falsely links Mr. Shahidullah and Dawah USA Inc. to a random website—www.dawahusa.com. Specifically, your Article claims that Mr. Shahidullah "runs a proselytizing website, Dawah USA" and that the website is owned or operated by Dawah USA Inc. **This is false**. Mr. Shahidullah and Dawah USA Inc. do **not** own, operate, nor otherwise associate with the website "dawahusa.com." Neither Mr. Shahidullah nor Dawah USA Inc. have any knowledge concerning the identity/identities of the party/parties that are operating www.dawahusa.com. Dawah USA Inc.'s website URL is www.dawahusa.org.

Using this false connection to dawahusa.com, your Article claims that Mr. Shahidullah and Dawah USA Inc. are spreading "extremist propaganda." Since Mr. Shahidullah and Dawah USA Inc. have absolutely no association or connection to "dawahusa.com," your claims are 100 percent false. Your Article goes on to associate Mr. Shahidullah and Dawah USA Inc. with deceased terrorist and Al-Qaida cleric Anwar al-Awlaki. These claims are also false and highly offensive.

Mr. Shahidullah and Dawah USA Inc. ask that you immediately take down this false Article and cause this false Article to be taken down from all websites/platforms that are currently or have ever published this false Article.

**Defamation by Libel and Libel *Per Se***

New York law defines libel as a written statement of fact regarding the plaintiff published by the defendant that is false and causes injury to the plaintiff. *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001). *See also, Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 111 L.Ed.2d 1,110 S.Ct. 2695 (1990) (U.S. Supreme Court holding that a statement or publication containing provably false factual assertions constitutes defamation); RESTATEMENT (SECOND) OF TORTS, § 559 ("A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him"); *Dillon v. City of New York*, 261 A.D.2d 34, 37 -38 (1999). Libel *per se* involves a false allegation that a person is engaged in a crime, or that otherwise tends to injure a person in his or her trade, business, or profession. *Geraci v. Probst*, 61 A.D.3d 717, 718, 877 N.Y.S.2d 386, 388 (2009). Libel *per se* is defamatory "on its face" and does not require explanatory matter to be proven; general damages are assumed.

Publication of incomplete and hence misleading information also gives rise to liability for defamation, since the incomplete presentation of facts can give rise to an actionable false assertion of fact. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 110 S. Ct. 2695, 2706, 111 L. Ed. 2d 1,18 (1990) (incomplete facts may imply a false assertion of fact). It also is well established that "defamation by implication stems not from what is literally stated, but what is implied." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990).

Statements in your Article about Mr. Shahidullah and Dawah USA Inc. give rise to claims for libel and libel *per se* on the basis described above. Remedies include substantial monetary damages and punitive damages. *Strader v. Ashley*, 61 A.D.3d 1244, 1248, 877 N.Y.S.2d 747, 751 (2009) (affirming jury's award of punitive damages in connection with a defamation claim).

**False Light Invasion of Privacy**

False light invasion of privacy constitutes a public statement about a person that either is false or places the person in a false light, is highly offensive to a reasonable person, and is made in reckless disregard of whether the information is false or would place the person in a false light. *See* RESTATEMENT (SECOND) OF TORTS § 652 E (1977); *Machleder v. Diaz*, 801 F.2d 46 (2d. Cir. 1986). The statement need not be defamatory. *Id.* False light invasion of privacy includes embellishment (adding false material to a true story which places the subject in a false light) and distortion (arranging otherwise true information in a way to give a false impression). *See also Obeidallah v. Andrew B. Anglin*, *dba Daily Stormer*, 2017 WL 3506475 (S.D. Ohio 2017).

Statements in your Article about Mr. Shahidullah and Dawah USA Inc. give rise to claims for false light invasion of privacy. Remedies include substantial monetary damages and punitive damages.

**Mr. Shahidullah's and Dawah USA Inc's Demands**

Mr. Shahidullah and Dawah USA Inc. hereby demand that you immediately cease and desist any further publication, release, or dissemination of the Article; that you issue a full and complete retraction and removal of the Article from all sources, including but not limited to social media platforms and all organization, websites, and/or platforms that have published your Article, and issue an apology to our clients as to all statements made about them in the Article in a manner that is substantially similar to the publication and dissemination of the Article.

**Please provide proof that you have met Mr. Shahidullah's and Dawah USA Inc.'s demands within five (5) days of receiving this letter.** Should you have any questions regarding this letter, please do not hesitate to contact me. If you do not comply with this cease and desist letter within the time period mentioned above, a lawsuit may be filed in the proper jurisdiction seeking monetary damages as well as pursuing all available legal remedies for your defamation.

**This letter is not intended as a full or complete statement of all relevant facts or applicable law, and nothing herein is intended as, nor should it be deemed to constitute, a**

waiver or relinquishment of any of our clients' rights, remedies, claims or causes of action, all of which are hereby expressly reserved.

**\* \* \***

You are now on notice of the foregoing claims, and; therefore, you are now under a legal duty to affirmatively preserve, and not delete, destroy, hide or misplace, all documents, communications and materials of all types, in both physical and electronic form, that refer to or relate to in any way to the Article and any/all of its contents, Mr. Shahidullah, and/all of his businesses, and/or Dawah USA Inc.

### Preservation Obligations

This demand requires that you affirmatively preserve, and not destroy, delete, hide or misplace, documents and materials of all kinds, including without limitation all electronic mail (email), letters, draft letters, facsimile transmissions, memoranda, draft memoranda, instant messages (IMs), text messages, chats, phone messages, phone logs, calendars, reports, handwritten notes, typewritten notes, charts and spreadsheets, articles, draft articles, photographs, still images, illustrations, video recordings, audio recordings, transcripts of video or audio recordings, among other types of documents and communications. This demand also requires that you affirmatively preserve all servers, backup tapes, hard drives and storage devices in your possession, custody or control and could contain any of the aforementioned documents and/or materials.

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("Once a 'litigation hold' is in place, a party and her counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold'."); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007) ("To ensure that the expansive discovery permitted by Rule 26(b)(1) does not become a futile exercise, putative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation."); *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) (holding that "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action"); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 193 (C.D. Cal. 2006) (same); *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012) (holding that a party has an "obligation to preserve evidence from the moment that litigation is reasonably anticipated.")

Severe sanctions may be imposed for failure to preserve evidence after being notified of a dispute. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 520 (D. Md. 2010) (holding "sanctions may stem from failure to comply with a preservation order."); *Pitney Bowes Gov't Solutions, Inc. v. United States*, 93 Fed. Cl. 327, 336 (2010) ("Spoliation may result in sanctions . . . grounded in contravention of specific discovery or document-preservation orders."); *Pension Committee of the Univ. of Montreal Pension Plan v Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) (holding that a

"breach of the duty to preserve, and the resulting spoliation of evidence, may result in the imposition of sanctions by a court because the court has the obligation to ensure that the judicial process is not abused.""); *Zubulake*, 229 F.R.D. at 430 ("The spoliation of evidence germane 'to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.'"); *Beers v. General Motors*, 1999 WL 32538 (N.D.N.Y) (ordering **dismissal of case** for spoliation when party's expert lost critical evidence); *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) ("A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."); *see also Lutalo v. Nat'l R.R. Passenger Corp.*, No. 11-CV-00974-REB-KLM, 2013 WL 1294125, at *6 (D. Colo. Mar. 28, 2013) (ordering **evidentiary sanctions and attorneys' fees and costs** on spoliation motion); *Cabinetware, Inc. v. Sullivan*, 1991 WL 327959 (E.D. Cal. 1991); *William T. Thompson Co. v. General Nutrition Corp.*, 593 F.Supp. 1443 (C.D. Cal. 1984).

You should anticipate that much of the information requested to be preserved herein is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories, tablets, cell phones and smart phones).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messages, text messages, chats);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and
- Back Up and Archival Files (e.g., Zip, .GHO).

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem *not* reasonably accessible. You are obliged to *preserve* potentially relevant evidence from *both* these sources of ESI, even if you do not anticipate *producing* such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (effective December 1, 2006), you must identify all sources of ESI you decline to produce and demonstrate to the trier of fact why such sources are not reasonably accessible. *See* Fed. R. Civ. P. 26(b)(2)(B). For good cause shown, the trier of fact may then order production of the ESI, even if it finds that it is not reasonably accessible. *Id.* Accordingly, even ESI that you deem reasonably inaccessible *must be preserved in the interim* so as not to deprive my clients of their right to secure the evidence or the right of any trier of fact to adjudicate the issue.

### Preservation Requires Immediate Intervention

You must act **immediately** to preserve potentially relevant ESI including, without limitation, information with the **earlier** of a Created or Last Modified on or after **January 1, 2015 through the present**.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. **Be advised that sources of ESI are altered and erased by continued use of your computers and other devices**. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI.

**Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve documents, tangible things and all other potentially relevant evidence.**

### Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such a? litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and

• Executing drive or file defragmentation or compression programs.

**Guard Against Deletion**

You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It is simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation by Imaging**

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices of each of the persons with sufficient knowledge or information about this dispute, as well as each other person likely to have information pertaining to the dispute on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from **January 1, 2015 through the present**, as well as recording and preserving the system time and date of each such computer.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

**Preservation in Native Form**

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in connection with resolving this dispute.

You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

**Metadata**

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files, but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

**Servers**

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

**Home Systems, Laptops, Online Accounts and Other ESI Venues**

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

**Ancillary Preservation**

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices,

naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI.

You must preserve any cabling, drivers and hardware, other than a standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives, 3.5" floppy disk drives and other legacy or proprietary devices.

## Paper Preservation of ESI is Inadequate

**Because hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions.** If information exists in both electronic and paper forms, you should preserve both forms.

## Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agents, attorneys, employees, custodians, contractors and any other third parties in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

## System Sequestration or Forensically Sound Imaging

We suggest that, with respect to any person with sufficient knowledge or information of this dispute, removing their ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step.

In the event you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost-effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards

against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

**Preservation Protocols**

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. Otherwise, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the trier of fact.

**Do Not Delay Preservation**

We are available to discuss reasonable preservation steps; however, **you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay**. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek all appropriate sanctions.

*\* \* \**

This letter is not intended as a full or complete statement of all relevant facts or applicable law, and nothing herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of our clients' rights, remedies, claims or causes of action, all of which are hereby expressly reserved.

        Very truly yours,

        COUNCIL ON AMERICAN-ISLAMIC RELATIONS, NEW YORK INC. (CAIR-NY)

        */s/ Ahmed Mohamed*
        Ahmed Mohamed, Esq.
        Legal Director
        46-01 20th Avenue, Queens, NY 11105
        ahmedmohamed@cair.com
        Tele: 646-665-7599

cc: Clients