# Exhibit I

Holy Spirit Assn. v. Sequoia Elsevier Publ. Co., 1978 BL 186, 4 Med. L. Rptr. 1744 (N.Y. Sup. Ct. Oct. 26, 1978), Court Opinion

**Pagination**
\*     BL

[Majority Opinion](#) >

New York Supreme Court, New York County, Special Term, Part I

---

THE HOLY SPIRIT ASSOCIATION FOR THE UNIFICATION OF WORLD CHRISTIANITY v. SEQUOIA ELSEVIER PUBLISHING COMPANY

---

October 26, 1978

Libel action against publishing company. On defendants' motion for summary judgment.

Granted in part and denied in part.

Fraiman, J.:

**Full Text of Opinion**

Motions numbered 31 and 77 on the calendar of June 28, 1978 are consolidated for disposition. These are motions by defendants Sequoia Elsevier Publishign Co. Inc. (Sequoia) and Tom Dulack for summary judgment in this action for libel, on the ground that the alleged libel was not published with knowing falsity or in reckless disregard of the truth. Plaintiff is the Holy Spirit Association for the Unification of World Christianity, or as it is better known, the Unification Church. The allegedly libelous statements, sixteen in number, appear in a book entitled "Let Our Children Go!" which was published by Dutton & Co., Inc., a division of Sequoia. The book recounts the experiences of one Ted Patrick, who is also named as a defendant, in "deprogramming" members of various religious movements or "cults" of which plaintiff is one. Defendant Dulack, a professional writer, collaborated on the book with Patrick, and actually did most of all of the writing.

It is conceded by plaintiff that it is a "public figure" for the purpose of a defamation action. Accordingly, in order to establish its case, plaintiff must prove that each allegedly libelous statement was made "with 'actual malice' - that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (New York Times Co. v. Sullivan, [376 U.S. 254](#), [279-280](#) [1964] [ [1 Med.L.Rptr. 1527](#) ]). With respect to fourteen of the sixteen allegedly libelous statements, plaintiff has failed to meet this test. Patrick or one of his associates was the source of all of these statements except one, and they are clearly identified as such. The statements consist of derogatory descriptions of various aspects of the plaintiff's operations. The remaining statement appears as a caption to a photograph of a girl. The caption states that she had been forced by plaintiff to beg on the streets for eighteen hours a day. This was written by Sequoia's editor.

Basically, with respect to the statements which originated from Patrick or his associate, it is plaintiff's position that defendants either knew they were false or that they published them with a reckless disregard of whether they were false or not, because Patrick is an untrustworthy individual and this was or should have been

readily apparent to defendants. However, although Patrick is quoted extensively in the book, and plaintiff has raised numerous questions as to his credibility, defendants did not rely exclusively on what was said by Patrick in authoring and publishing the book. Before it was released, defendants had independently corroborated each of Patrick's statements concerning plaintiff from other sources. Thus, each charge by Patrick was confirmed by former members of plaintiff, by articles appearing in newspapers **[*2]** or magazines, by television documentaries, and by texts and treatises written about plaintiff. Basis for the photo caption was an interview by the book's editor of the girl in question and her father, who is a college professor.

[1] While it is entirely conceivable that, despite the independent corroboration obtained by defendants, these statements are false, as plaintiff alleges, it cannot be said, in view of the efforts made by defendants to verify them before publication, that they either knew they were false, or that they published them with a reckless disregard of their truth or falsity. Accordingly, their motions for summary judgment are granted to the extent of dismissing as to the moving defendants those portions of the complaint which allege that these statements are libelous.

With respect to the two remaining statements, both were authorized by Dulack and both allege that plaintiff's philosophy is anti-Semitic. The first appears at page 236 of the book. After identifying Sun Myung Moon as plaintiff's founder, it states as follows: "The cult that he heads is a theological-political instrument, combining elements of Manicheism, Nazi-style anti-Semitism, Calvinism, and the most discredited aspects of pre-Reformation Roman Catholicism, including the selling of blessings and indulgences and a doctrine of 'indemnification' for the sins of one's ancestors." (underscoring added) The second statement is on the following page of the book, and it appears in connection with a description of the contents of a 402 page training manual used by plaintiff. The statement is as follows: "The anti-Semitism of the cult is expressed in this passage (page 302 of the manual): 'Karl Marx was born in Germany and was Jewish. Jesus was Jewish and Karl Marx was Jewish, both ... His works were summarized into three books called Das Kapital ... The main theory of Das Kapital is the theory of exploitation, or theory of surplus value. His understanding was silly and foolish, but still it worked for a while. Simply speaking, Marx says he is rich and we are poor, let's take what he has ... Communish is the philosophy of hatred.'

"Communism is the offspring of Karl Marx, who was Jewish. Jesus was Jewish. Ergo, Jesus is also a philosopher of hatred, as are all the Jews."

As justification for the statement attributing elements of Nazi-style anti-Semitism to plaintiff's teachings, defendants rely solely on the above quoted passage from plaintiff's training manual, and on two newspaper articles. In one, appearing in the New York Times of Feb. 19, 1976, a rabbi, Maurice Davis, is quoted in the course of describing plaintiff as being authoritarian and having fanatical followers, as being reminded of the Nazi youth movement. In the other, appearing in the issue of the week of Feb. 15-21, 1976 of a newspaper called The Jewish Week, another rabbi, Bernard Spielman, is quoted as saying that, "Rev. Moon claims Hitler had to kill six millioin Jews 'as indemnity because the Jews refused to accept Jesus ...' " ..

[2] The court finds that this is insufficient basis to warrant a conclusion by the court at this time **[*3]** that the statements were made without actual malice. The portion of the training manual which identifies Marx and Jesus as Jews and then denigrates Communism, does not support the syllogism that defendants seek to make: Marx is a philosopher of hatred. Marx was Jewish. Jesus was Jewish. Ergo, Jesus was a philosopher of hatred, as are all Jews. This simply doesn't scan, particularly inasmuch as the teachings of Jesus are ostensibly an important part of plaintiff's philosophy. With respect to the two newspaper articles allegedly relied upon by defendants, it is not clear that they appeared in print before the book was published, and hence an issue is raised as to whether it was even possible for defendants to have relied upon them, as claimed. Obviously, material contained in publications printed subsequent to the publication of an allegedly libelous book cannot be used to support a claim that the material played a role in formulating the author's state of mind at the time the allegedly libelous matter in the book was written. Further, the article quoting Rabbi Davis makes no reference to plaintiff's alleged anti-Semitism, but, as noted, refers only to the authoritarian nature of plaintiff and its fanatical followers. And in relying upon the statement contained in the second article, defendants were apparently relying upon triple hear-say appearing in an obscure weekly newspaper. No showing is made as to what steps if any were taken to check the reliability of either the reporter or Rabbi Spielman, or to ascertain when the Rev. Moon allegedly made the statement attributed to him, and before what audience the statement was made. In view of all the foregoing, the court cannot say as a matter of law that the two statements attributing anti-Semitism to plaintiff were made without actual malice. Accordingly, the motion for summary judgment, insofar as it applies to these statements is denied. Settle order.