**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

|  |  |  |
|---|---|---|
| MUHAMMAD SHAHIDULLAH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 8:20-cv-03602-PWG |
| | ) | |
| ABHA SHANKAR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Eugene R. Licker (pro hac vice)
BALLARD SPAHR LLP
1675 Broadway, Floor 19
New York, NY 10019
Telephone: (646) 346-8048
Facsimile: (212) 223-1942
lickere@ballardspahr.com

Matthew D. Lamb (Bar No. 20203)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, D.C. 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
lambm@ballardspahr.com

Richard Horowitz (pro hac vice)
845 Third Avenue, 6th Floor
New York, NY 10022
Telephone: (212) 829-8196
Facsimile: (212) 813-3214
rhorowitz@rhesq.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**PAGE**

I.  PLAINTIFFS HAVE NOT STATED A CAUSE OF ACTION FOR DEFAMATION .... 1

    A.  Plaintiffs Are Limited Purpose Public Figures ........................................................ 1

    B.  The Publication Dealt With An Issue Of Public Concern ..................................... 6

    C.  Plaintiffs Have Failed To Plead Facts That, If Proven, Would Establish Actual Malice ........................................................................................................ 7

        1.  Plaintiffs' Opinion Of Defendant's Bias Does Not Evidence Actual Malice .......................................................................................... 10

        2.  Plaintiffs' Allegations About Shankar's Post-Publication Conduct Do Not Plausibly Suggest Actual Malice ................................................. 11

        3.  Plaintiffs' Arguments About What Shankar Could Have Done Are Similarly Unavailing .......................................................................... 13

    D.  Defendant's Exhibits Are Cognizable On This Motion ....................................... 13

II.  THE COMPLAINT SHOULD BE DISMISSED AS CHAMPERTOUS ....................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Biro v. Condé Nast*,
807 F.3d 541 (2d Cir. 2015)..................................................................1, 2, 8, 12

*Blankenship v. Manchin*,
471 F.3d 523 (4th Cir. 2006) ...............................................................14

*Church of Scientology Int'l v. Time Warner*,
903 F. Supp. 637 (S.D.N.Y. 1995) .......................................................11

*Church of Scientology v. Behar*,
238 F.3d 168 (2d Cir. 2001)..................................................................10

*Coleman v. Grand*,
No. 18-cv-5663 (ENV) (RLM), 2021 U.S. Dist. LEXIS 37131 (E.D.N.Y. Feb.
22, 2021) ...............................................................................................10

*Eramo v. Rolling Stone, LLC*,
209 F. Supp. 3d 862 (W.D. Va. 2016) ...................................................8

*Fawzy v. Wauquiez Boats SNC*,
873 F.3d 451 (4th Cir. 2017) ...............................................................4

*Freeman v. Johnston*,
84 N.Y.2d 52 (1994) .............................................................................13

*Gertz v. Welch*,
418 U.S. 323 (1974)..............................................................................4

*Gross v. N.Y. Times Co.*,
281 A.D.2d 299 (1st Dep't 2001) .........................................................10

*Harte-Hanks Commc'ns v. Connaughton*,
491 U.S. 657 (1989)..............................................................................12, 13

*Herbert v. Lando*,
781 F.2d 298 (2d Cir. 1986)..................................................................11

*Hoffman v. Wash. Post Co.*,
433 F Supp. 600 (D.D.C. 1977) ...........................................................12

*Lerman v. Flynt Distrib. Co.*,
745 F.2d 123 (2d Cir. 1984)..................................................................2

*Loeb v. New Times Commc'ns Corp.*,
    497 F. Supp. 85 (S.D.N.Y. 1980) .........................................................................10

*Lohrenz v. Donnelly*,
    223 F. Supp. 2d 25 (D.D.C. 2002) .......................................................................10

*Markey v. Wells Fargo Bank, N.A.*,
    No. PWG-18-1867, 2019 U.S. Dist. LEXIS 45611 (D. Md. Mar. 20, 2019) ...........14

*Martin v. Daily News L.P.*,
    121 A.D.3d 90 (N.Y. App. Div. 2014) ...................................................................13

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991).........................................................................................1, 8

*Mayfield v. NASCAR*,
    674 F.3d 369 (4th Cir. 2012) ..............................................................................2, 8

*Mitre Sports International Ltd. v. Home Box Office, Inc.*,
    22 F. Supp. 3d 240 (S.D.N.Y. 2014)........................................................................6

*Naantaanbuu v. Abernathy*,
    816 F. Supp. 218 (S.D.N.Y. 1993) ......................................................................5, 6

*Silvester v. ABC*,
    650 F. Supp. 766 (S.D. Fla. 1986) ........................................................................11

*Suson v. NYP Holdings, Inc.*,
    19 Misc. 3d 1116(A), 2008 N.Y. Misc. LEXIS 1939 (Civ. Ct. N.Y. Cnty. Mar.
    31, 2008) ...............................................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).............................................................................................14

*Westmoreland v. CBS*,
    596 F. Supp. 1170 (S.D.N.Y. 1984).......................................................................11

**Statutes & Other Authorities**

N.Y. Civ. Rights Law § 76-a ......................................................................................7

Restatement (2d) of Torts § 580A cmt. d ...................................................................12

In her opening brief, Defendant offered two arguments, either of which support dismissal of the Complaint: (1) Plaintiffs have not alleged facts plausibly suggesting actual malice, as required for claims brought by limited purpose public figures or based on statements about matters of public concern; and (2) the suit is champertous because CAIR has purchased the right to sue and has done so in its own name, even though it has no standing to do so.[1]  Most of the briefing on this motion pertains to the first argument.

## I.  PLAINTIFFS HAVE NOT STATED A CAUSE OF ACTION FOR DEFAMATION

Defendant, in her opening brief, argued that Plaintiffs must allege and prove actual malice because Plaintiffs are, at the least, limited purpose public figures ("LPPF"), having taken public roles and inserted themselves into the very public debate over American-Islamic relations, and because that issue is one of public concern.  Actual malice looks at the Defendant's subjective state of mind at the time of publication—whether she knew a statement was false or harbored serious doubts about its truth—but Plaintiffs have not alleged facts that support this claim.  *See Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (requiring showing "that the author in fact entertained serious doubts as to the truth of his publication, or acted with a high degree of awareness of probable falsity" (internal marks and citations omitted)).  The Complaint must be dismissed.

### A.  Plaintiffs Are Limited Purpose Public Figures

The First Amendment protects speech about public figures, whether an "all purpose" public figure—high-level politicians, major celebrities, and the like—or a "limited purpose public figure," who injects himself into a particular issue or debate.  *See Biro*, 807 F.3d at 544. In either case, the public figure plaintiff must allege facts plausibly suggesting that the defendant

---

[1] Capitalized terms have the meaning ascribed to them in Defendant's opening brief.

made the statement at issue with actual malice, that is, with knowledge at the time that what she said was false or with reckless disregard for obvious signs of falsity. *Id.* (affirming dismissal for failure to plead actual malice); *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012) (same).

Plaintiffs deny that they are LPPFs and portray Shahidullah as just a local Imam tending to his followers. Opp. at 4. Plaintiffs do not dispute the well-known test for a limited purpose public figure:

> A defendant must show the plaintiff has: (1) successfully invited public attention to his views in an effort to influence other prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984). Plaintiffs, however, misidentify the "public controversy" element of the public figure analysis.

Plaintiffs here have it backwards. They look to Shankar's article to define the issue, asking whether that reporting is already a matter of public debate, rather than starting with the Plaintiffs and asking, as the law does, whether they have invited public attention, attempted to influence public views, or voluntary injected themselves into a public controversy. *See id.* Plaintiffs thus argue, erroneously, that the "controversy" here is whether or not Shahidullah runs DawahUSA.com, rather than addressing Defendant's actual point, which is that Plaintiffs are public figures with regard to public debate and concern over Islamic-American relations.

Plaintiffs' argument would essentially defeat the purpose of the public figure protections. "News," by its very nature, is novel, and most frequently, the specifics of the publication will have little or no predicate. If those specifics determined the necessary showing of fault, there would be little left of the protections of free speech developed over the past half-century, and reporters would report "news" at their peril. Rather, the First Amendment starts with the

plaintiff, asks whether he has inserted himself into public debate or controversy, and then asks whether the publication relates in some way to that debate.

Imam Shahidullah has clearly, and admittedly, invited attention to his views of American-Islamic relations. He has done so voluntarily and prominently. He "has devoted his career to interfaith efforts" and "created Dawah USA Inc., a 501(c)(3) public charity devoted to promoting and developing cooperation and understanding among people of diverse faiths in general and Muslims in particular." Opp. at 1. Imam Shahidullah not only has access to the media, he is a director of ITV USA, a New York-based American television channel. The IRS Form 990 Plaintiffs have supplied to this Court[2] notes that their mission is to "create awareness to the mass interfaith people through electronic printing media specially religious knowledge [sic]." Opp., Ex. A at 1.

In their EDNY complaint, presumably before they focused on the LPPF issue, Plaintiffs lauded Shahidullah as "active in interfaith outreach" (¶ 10) who "received accolades for his efforts. He was President of Interfaith Center of South Asia, the founder and president of Interfaith Center of USA, and a chaplain for the New York State Chaplain Task Force." *Id.* ¶ 26. Plaintiffs tout that Shahidullah has "participated in interfaith events organized by New York's 9/11 tribute museum, offered the Bangladesh Day Invocation to the New York State Senate Chambers in Albany on March 24, 2015, been a speaker to the NYPD, and attended the United

---

[2] Plaintiffs supplied the 990 to show that Shankar could have learned that Shahidullah had no web site. As set forth in Defendant's opening brief, proof of untaken research steps does not establish actual malice, so the point is pointless. Interestingly, however, the 990 has no information in item J (website). *See* Reply Affirmation of Eugene Licker, dated May 28, 2021 ("Licker Reply Aff."), Ex. A (Form 990); *see also id.* Ex. B (Instructions) (directing the filer to indicate N/A in the absence of a web site). Most importantly, Dawah USA *did* have a website in 2017: itvusa.tv. The address and telephone number listed on that site are the same as those for Dawah USA, Inc., which is listed as a sponsor. *See* https://itvusa.tv.

Nations World Interfaith Harmony Week.  *Id.* ¶ 27.  They attached to the complaint proclamations and citations from the New York State Senate, New York City Council, and the New York State Assembly for his outreach work.  *Id.* Exs. A, B, & C.[3]

Accordingly, he is an LPPF with regard to Islamic-American relations, interfaith relations, and public perceptions of Islam in America.  Defendant's article focused entirely on that subject, noting what she perceived as internally contradictory positions taken by Plaintiffs with regard to American-Islamic relations.  Thus, because Plaintiffs are LPPFs and because Defendant's article focused on the issue, Plaintiffs are LPPFs.  Thus, to claim defamation, Plaintiffs must allege facts that, if proven, demonstrate actual malice.  They have not done so.

Plaintiffs claim that Shahidullah is no more an LPPF that was Elmer Gertz.  Opp. at 8.  The contrast between Plaintiffs and Gertz (as well as other private figures), however, is stark.  Gertz did what every lawyer does – take on a case, in this case representing the family of a victim of a police killing.  *Gertz v. Welch*, 418 U.S. 323, 325 (1974).  The subsequent trial of the police officer, in which Gertz played no role, garnered publicity, and as a result, Gertz earned the enmity of Welch and his John Birch Society.  *Id.*  Gertz took no affirmative steps to reach out to the public and never discussed the case with the press or in any way sought public attention.  *Id.* at 326, 352.  As a private individual, Gertz lacked broad access to "channels of effective communication."  *Id.* at 344.  Accordingly, the Supreme Court found him not to be a public figure.  *Id.* at 352.

---

[3] This Court can take judicial notice of a filed complaint. *See* discussion *infra.*  Plaintiffs cite *Fawzy v. Wauquiez Boats SNC,* 873 F.3d 451, 455 (4th Cir. 2017), for the proposition that filing an amended complaint renders the original complaint a nullity.  The holding there was that once the amended complaint is filed, the question of legal sufficiency focuses only on the amended complaint.  Prior factual admissions do not disappear upon the withdrawal of a complaint.

Imam Shahidullah is quite different. In addition to plying his trade, he and Dawah USA, Inc. have purposefully taken a public-facing stance with regard to American-Islamic relations. Plaintiffs' very public mission is detailed above. He is chair of ITV USA, which is sponsored by Dawah USA, Inc., located at the address of Dawah USA, Inc., and shares its phone number. Its website describes its mission as "to counter misinformation and misunderstanding against Islam, educate the audience in proper Islamic teachings through our programmings [sic], inculcate religious and ethical values to the next generations." ITV USA's "aim is to influence individuals and policy makers." https://itvusa.tv/about-us/, last accessed May 27, 2021. The website of the Institute for Peace and Leadership, Inc., for which Shahidullah serves, according to the website, a "Communication and Public Outreach" function, states, "At present Shahidullah is running the Islamic programmers' of different television channels as a presenter as well as an orator like Banglavision, Rtv, Gtv, Channel24 and Boishakhi Television." http://www.peaceandleadership.org/founder-emeritus/imam-muhammad-shahidullah/, last accessed May 27, 2021.

Plaintiffs' wonderment at how Shankar distinguishes Plaintiffs from several other persons ("it is unclear how Ms. Shankar distinguishes Elmer Gertz, a large multinational company prominent in the news on an issue, and a candidate for elective office —all who were held not to be limited public figures—from Imam Shahidullah and Dawah USA Inc.") is telling, and the answer is dispositive. Opp. at 8. The plaintiff in *Naantaanbuu v. Abernathy*, 816 F. Supp. 218 (S.D.N.Y. 1993) was a candidate for public office. She sued Ralph David Abernathy for portraying her as having an extramarital affair with Martin Luther King the night before he was assassinated. The Court held that although Ms. Naantaanbuu could be considered an LPPF for some purposes, she did not have that status for purposes of her portrayal in the book:

The controversy in this case is not the publication of the Book; nor is it, as the defendants seem to argue, the extent or nature of the plaintiff's role in the civil rights movement throughout her life-time. Rather, the "controversy" is the question of the events that took place on the last night of King's life. Even expanded, the controversy is at its broadest the question of King's involvement with women outside of his marriage.

The plaintiff's actions and high profile in her community might arguably make her a public figure if this litigation concerned statements made, for example, about the nature of her conduct as a civil rights activist – i.e., the controversy would involve her ability to conduct herself as a civil rights worker, and her actions in the civil rights movement overall might then be relevant. Conversely, if immediately after King's assassination, Naantaanbuu had come forward or in any way attempted to make known to the press or to her community at large the events that transpired on the night of April 3, a case could perhaps then be made that she was a limited purpose public figure as to the controversy about what happened that night.

*Id.* at 225.  Similarly, had Ms. Shankar accused Shahidullah of philandering or financial misdeeds unrelated to his outreach work, he might not be considered an LPPF.  But she focused on that which makes him an LPPF:  promotion of American-Islamic relations.

The plaintiff in *Mitre Sports International Ltd. v. Home Box Office, Inc.*, 22 F. Supp. 3d 240 (S.D.N.Y. 2014) was a large multinational corporation that manufactured soccer equipment and was accused of child labor violations.  There, the Court held that the plaintiff had done nothing to inject itself into the debate over child labor regulation or to influence the public, and therefore was not an LPPF for that purpose.  *Id.* at 250-252.  Clearly, Plaintiffs have injected themselves into the debate over American-Islamic relations and are therefore LPPFs for purposes of the article at issue in this case.

### B.  The Publication Dealt With An Issue Of Public Concern

Remarkably, Plaintiffs claim, without authority, that "Whether Plaintiffs are supposedly terrorists, or supporters of terrorists, is simply not a matter of public concern."  Opp. at 9.  Given that he has apparently dedicated his life's work to it, Shahidullah likely is surprised to hear that "Here, nobody was discussing Plaintiffs or their interfaith work until after Ms. Shankar decided

to manufacture a controversy as a way of fomenting Islamophobia," and that "Plaintiffs' interfaith work is not a dispute that has ramifications for third parties." *Id.* at 10. These statements are nonsense. The issue involved in this case is one clearly of public concern and interest: American-Islamic relations. It is ironic at best that lawyers who work for arms of the Council of American-Islamic Relations claim in this case that American-Islamic relations are not an issue of public concern.

Clearly, these subjects are matters of public concern, and the article at issue focuses on these matters of public concern and Plaintiffs' commentary on them. *See Coleman v. Grand*, No. 18-cv-5663 (ENV) (RLM), 2021 U.S. Dist. LEXIS 37131, at *23 (E.D.N.Y. Feb. 22, 2021) ("New York law considers a matter of public concern as a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants. This includes a matter of political, social, or other concern to the community, even if it does not affect the general population." (internal marks and citations omitted)). As Plaintiffs admit, *see* Opp. at 9, in that circumstance, they must establish that Shankar acted with actual malice. N.Y. Civ. Rights Law § 76-a (requiring proof of actual malice in "a claim based upon . . . lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest"); *Coleman*, 2021 U.S. Dist. LEXIS 37131, at *23 (granting summary judgment for defendant under recent amendments to N.Y. Civ. Rights Law § 76-a because statements were on a matter of public concern and plaintiff could not prove actual malice).

### C. Plaintiffs Have Failed To Plead Facts That, If Proven, Would Establish Actual Malice

While Plaintiffs dedicate much ink to denigrating Defendant, accusing her of bias and "malice" in the colloquial sense, calling her names, and attacking her professionalism and skill, not to mention her integrity, they do not allege facts that plausibly suggest that she acted with

actual malice, a term of art meaning that she put the article to press knowing, subjectively, at the time of publication, it to be false or recklessly disregarding the truth. *See Biro*, 807 F.3d at 546; *Masson*, 50 U.S. at 510. Plaintiffs do not dispute this standard, or the propriety of dismissal under Rule 12(b)(6) when the allegations do not identify "plausible grounds to infer actual malice by alleging enough fact[s] to raise a reasonable expectation" that Defendant acted with actual malice. *Biro*, 807 F.3d at 546 (internal marks and citations omitted) (affirming dismissal of defamation claim by LPPF under *Iqbal/Twombly* plausibility standard); *see also Mayfield*, 674 F.3d at 377 ("a 'plausible' claim for relief must be articulated").

Plaintiffs argue that their allegations are sufficient because courts can consider circumstantial evidence of actual malice. *See* Opp. at 10-11. Nonetheless, that circumstantial evidence (or at this stage, allegations) must still plausibly suggest actual malice at the time of publication. *See Mayfield*, 674 F.3d at 378 (affirming dismissal of defamation claim where allegations of ill will were insufficient and counter-balanced by acknowledgement that defendant contacted plaintiff for comment pre-publication).

Plaintiffs quote from cases in which courts accept evidence of corroborative allegations – such as bias – to bolster a broader discussion of actual malice. *See* Opp. at 11. None of those cases, however, mirror this one. The key distinction between the present case and the ones on which Plaintiffs rely is that, in the latter, the circumstantial allegations bolstered much more convincing allegations or evidence of knowledge of falsity or reckless disregard *at the time of publication. See, e.g.*, *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872-73 (W.D. Va. 2016) (denying summary judgment upon cumulative evidence of bias, refusal to depart from pre-conceived storyline, obvious reasons to doubt credibility of central witness, and "conscious[]

disregard [of] contradictory evidence" before publication, including "at least three individuals" who advised the author her portrayal "was inaccurate"). That is simply not the case here.

Plaintiffs cannot point to allegations in their Complaint that plausibly suggest actual malice. Instead, they point to the periphery, relying on accusations that IPT is biased and so Ms. Shankar must be, criticisms of Ms. Shankar's investigation, and implausible interpretations of post-publication conduct—all of which courts have rejected as insufficient without more—but importantly, they do not point to any factual allegations suggesting that, ***at the time of publication***, Ms. Shankar knew that what she was publishing was false. Indeed, Plaintiffs repeatedly admit that they have no evidence that Shankar knew that what she wrote was wrong at the time. They repeatedly acknowledge that Shankar did not have "actual knowledge" of the mistake until she received Shahidullah's middle-of-the-night message, seven months after publication. Compl. ¶¶ 8, 36, 65. Plaintiffs' Opposition admits they do not know why Shankar thought the web site was theirs. *See* Opp. at 2 ("Why Shankar suggested or thought otherwise only Shankar knows."). In fact, Shankar explained in her opening brief why she thought the web site belonged to Dawah USA, Inc.: (a) Ms. Shankar spoke twice to Shahidullah pre-publication, at her initiative, and he failed to deny ownership of dawahusa.com; (b) she sent an email to the website requesting pertinent information but received no response; (c) she saw that the website URL contained the name of Shahidullah's organization; (d) she saw that each page of the website displayed the name Dawah USA in large, prominent font; and (e) no one from Dawah USA, Inc. told her of her mistake until seven months after publication, and then in a manner that cast doubt on the credibility of the information. Upon receipt of the cease and desist letter, she

immediately took down the Article, suggesting that she did not know at the time of publication that there was an error—exactly the opposite of Plaintiffs' actual malice accusations.[4]

      1.  <u>Plaintiffs' Opinion Of Defendant's Bias Does Not Evidence Actual Malice</u>

By way of analogy, Plaintiffs offer a small handful of condiments but skip entirely the main course. Citing their own and others' (low) opinions of Shankar's work and approach, Plaintiffs note that post-publication behavior and proof of animus can be relevant to actual malice. The point misses Defendant's, which is that the relevant time period for which Plaintiffs must prove actual malice is at the time of publication, which Plaintiffs have not done. Moreover, while proof of animus and the like might be corroborative of proof of knowing falsehood or reckless disregard for the truth, there are no factual allegations of animus, only conclusory allegations, and no allegations of pre-publication knowledge to corroborate. Courts have consistently held that bias, malice, or even a "pre-existing agenda" does not establish actual malice. *See, e.g., Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 48 (D.D.C. 2002) ("pre-existing agenda … is not indicative of actual malice"), *aff'd*, 350 F.3d 1272, 1285-86 (D.C. Cir. 2003); *Gross v. N.Y. Times Co.*, 281 A.D.2d 299, 299 (1st Dep't 2001) ("that some of [defendant's] sources may have borne ill, is not probative of actual malice"); *Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85, 92 (S.D.N.Y. 1980) (rejecting bias argument absent evidence that sources provided false information).

In *Church of Scientology v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) the Second Circuit rejected a similar attempt to substitute proof of animus for proof of actual malice. Plaintiff argued that the defendant "had a negative view of Scientology, and that his bias pervaded his

---

    [4] Plaintiffs may claim that Shankar took down the article only because she had been "caught," suggesting the entirely unreasonable inference that she published the article thinking that Plaintiffs would never come to hear of it.

investigation and caused him to publish false and defamatory statements about CSI." The trial

court and the Second Circuit rejected the argument because plaintiff provided no evidence of

knowing falsity or reckless disregard." *Id.*; *see also Silvester v. ABC*, 650 F. Supp. 766, 779

(S.D. Fla. 1986) ("reporter's bias, 'in the sense of a determined effort to confirm a previously

formed suspicion,' does not establish malice." (citation omitted)), *aff'd*, 839 F.2d 1491, 1498-99

(11th Cir. 1988).

In fact, allegations such as those made by Plaintiffs actually cut *against* a plausible theory

of actual malice. *See Westmoreland v. CBS*, 596 F. Supp. 1170, 1174 (S.D.N.Y. 1984) ("A

previously formed belief rebuts as much as it establishes constitutional malice, as it tends to

demonstrate sincerity."); *Church of Scientology Int'l v. Time Warner*, 903 F. Supp. 637, 641

(S.D.N.Y. 1995) ("The speaker's belief in his statements, even his exaggerations, enhances,

rather than diminishes, the likelihood that they are protected from libel attack by the First

Amendment. Only where the speaker himself lacks this conviction, where the speaker entertains

serious doubt as to the veracity of his statements, is the false statement actionable."), *aff'd by

Behar*, 238 F.3d at 174.

> ## 2. Plaintiffs Allegations About Shankar's Post-Publication Conduct Do Not Plausibly Suggest Actual Malice

Receipt of post-publication information is not proof of what Defendant knew *prior* to

publication. *See Herbert v. Lando*, 781 F.2d 298, 309 (2d Cir. 1986) ("inaccuracies brought to

the attention of the publisher after publication are not relevant to the publisher's state of mind

before publication."). Accordingly, Plaintiffs have shifted to an even more attenuated claim: that

Shankar's reaction to Shahidullah's tweet demonstrates actual malice. The argument fails both

in its premise and its conclusion. In the middle of the night, seven silent months after

publication, someone purporting to be the same Shahidullah to whom Shankar spoke twice pre-

publication without protestation of error sends a message under the handle @itvusanews saying, "My Name is Muhammad Shahidullah. I want to talk with you about Dawah website. This is not belong us. [sic]." Compl. ¶ 50. Disregarding this message, even blocking the sender, is hardly bizarre (*see* Opp. at 2) and certainly does not evidence actual malice, nor does Defendant's decision not to retract in the face of this unclear, unknown denial. *Biro*, 963 F. Supp. 2d at 281 ("a failure to retract occurs, by definition, after publication, meaning that its probative value as to a defendant's state of mind at the time of publication is dubious at best"); *see also* Restatement (2d) of Torts § 580A cmt. d (noting absence of judicial treatment of refusal to retract upon proof of falsity).[5]

Similarly, Plaintiffs' claim that Horowitz's letter was a threat or a "doubling down," that somehow proves that Shankar knew what she printed was false when she wrote it, *see* Opp. at 14-15, simply does not follow. Horowitz laid out, in careful, lawyer-like analysis, IPT's concerns about what is portrayed on what CAIR acknowledged is, in fact, Shahidullah's website. He put CAIR on notice that IPT reserved the right to voice its opinion in the future about that content, not Shankar's article. He "invited" CAIR "to contact me should you feel we are in error." Double down? Hardly. Certainly it is not evidence of anyone's actual malice and not any evidence relating to Shankar.

Finally, Ms. Shankar's other post-publication action—namely, correcting the article upon realizing her error—is far more probative of the absence of actual malice than knowledge of falsity. *See, e.g., Hoffman v. Wash. Post Co.*, 433 F Supp. 600, 605 (D.D.C. 1977) ("[I]t is

---

[5] Moreover, "the press need not accept 'denials, however vehement,'" because unsupported denials, "are so commonplace … they hardly alert the conscientious reporter to the likelihood of error.'" *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) (citation omitted).

significant and tends to negate any inference of actual malice on the part of the [newspaper] that it published a retraction"), *aff'd without op.*, 578 F.2d 442 (D.C. Cir. 1978).[6]

### 3. Plaintiffs Arguments About What Shankar Could Have Done Are Similarly Unavailing

Although Defendant takes issue with Plaintiffs' claim that there were investigative steps she could have taken that would have clued her into her error, *e.g.*, Opp. at 13, the jurisprudential reality is that even if true, these allegations would not be sufficient to suggest actual malice. *See Harte-Hanks*, 491 U.S. at 688 ("failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard"); *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103 (N.Y. App. Div. 2014) (carelessness); *Freeman v. Johnston*, 84 N.Y.2d 52, 57-58 (1994) (failure to investigate); *Suson v. NYP Holdings, Inc.*, 19 Misc. 3d 1116(A) , 2008 N.Y. Misc. LEXIS 1939, at *27-28 (Civ. Ct. N.Y. Cnty. Mar. 31, 2008) (failure to investigate).

## D. Defendant's Exhibits Are Cognizable On This Motion[7]

Plaintiffs want to have it "both ways," but they cannot. They want to rely on, but misrepresent, documents in the Complaint and other judicially noticeable facts and prevent Defendant from correcting the record by offering the documents, referred to in the Complaint, that bely Plaintiffs' claims. The law does not allow it.

On a Rule 12(b)(6) motion, this Court is allowed to consider documents incorporated by reference into the Complaint, documents referred to in and integral to the Complaint, and matters

---

[6] Plaintiffs' complaint about Defendant's use of the title of the article in her notice of correction cannot be taken seriously.

[7] Contrary to Plaintiffs' claim (Opp. at 17), Defendant does not seek to convert this motion into one for summary judgment.

of which, because their authenticity is unquestioned, the Court can take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (considering newspaper article that was attached to motion to dismiss, that was clearly integral to and relied upon by complaint, and whose authenticity was not disputed).

Each of the exhibits attached to the Licker Aff. offered in support of Defendant's opening brief fits into one of those categories, to wit:

- Licker Aff. Exs. A (E.D.N.Y. Compl.), B (Orig. Compl. in this action), & C (operative Compl.) – Uncontested and subject to judicial notice. *Markey v. Wells Fargo Bank, N.A.*, No. PWG-18-1867, 2019 U.S. Dist. LEXIS 45611, at *2 n.3 (D. Md. Mar. 20, 2019) (taking judicial notice of state court filings in removed case).

- Ex. D (domain report for itvusa.tv) – Incorporated into the Complaint by reference, as Plaintiffs allege they did not have a website using the Dawah name before dawahusa.org, *see* Compl. ¶ 30; that any reasonable researcher would have seen that dawahusa.com opened before Dawah USA Inc. was formed, *id.* ¶ 34; and that Horowitz's letter about the contents of itvusa.tv was a threat, *id.* ¶ 10.

- Ex. E (Shankar Declaration) – Plaintiffs aver that Defendant represented that she had a brief call with Shahidullah solely to schedule another call, Compl. ¶ 33, and Plaintiffs know that is a misrepresentation and is absolutely integral to the Complaint.

- Ex. F (Shankar email) – Plaintiffs refer to this document, making it integral to the complaint, and misrepresent its contents. *See* Compl. ¶ 33.

- Exs. G & H (CAIR September 28, 2020 letter and Horowitz response) – Plaintiffs rely almost entirely on, and incorporate by reference, this exchange of correspondence to attempt to demonstrate actual malice and misrepresent its contents.

## II. THE COMPLAINT SHOULD BE DISMISSED AS CHAMPERTOUS

Plaintiffs clearly do not understand this admittedly novel argument, but it is actually quite simple. Defendant does not complain about CAIR's provision of counsel. Defendant *does* complain that two arms of CAIR purport to submit the Complaint herein on their own behalf rather than on behalf of Plaintiffs. That is what the signature page says. Accordingly, Plaintiffs have provided CAIR the vehicle through which it can sue Defendant (a law suit for which CAIR has no standing) in exchange for CAIR's providing counsel. That is champerty, and champerty is illegal.

Dated: May 28, 2021

/s/ Eugene Licker
Eugene R. Licker (pro hac vice)
BALLARD SPAHR LLP
1675 Broadway, Floor 19
New York, NY 10019
Telephone: (646) 346-8048
Facsimile: (212) 223-1942
lickere@ballardspahr.com

/s/ Matthew Lamb
Matthew D. Lamb (Bar No. 20203)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, D.C. 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
lambm@ballardspahr.com

*/s/ Richard Horowitz*

Richard Horowitz (pro hac vice)
845 Third Avenue, 6th Floor
New York, NY 10022
Telephone: (212) 829-8196
Facsimile: (212) 813-3214
rhorowitz@rhesq.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on May 28, 2021, I electronically filed the foregoing **Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the Complaint**.  Copies will be electronically served to all counsel of record who have appeared.

/s/ Matthew D. Lamb
Matthew D. Lamb