IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MUHAMMAD SHAHIDULLAH**, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.  DLB-20-3602 |
| **ABHA SHANKAR**, | * | |
| Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Muhammad Shahidullah and Dawah USA Inc. ("Dawah USA") claim that defendant Abha Shankar, a researcher and reporter for the Investigative Project on Terrorism ("IPT"), defamed them by writing an article that falsely stated they ran a website promoting Islamic extremism. ECF 39. Shankar has moved to dismiss the complaint for failure to state a claim. ECF 43. The motion has been fully briefed. ECF 45 & 46. A hearing is not necessary. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss is granted. The complaint is dismissed with prejudice.

**I.      Background[1]**

Shahidullah is a respected imam, an Islamic religious leader, in New York who has devoted his career to interfaith work and peace advocacy. ECF 39, ¶¶ 1–2. In 2016–2017, Shahidullah created Dawah USA, a 501(c)(3) public charity devoted to promoting and developing cooperation and understanding among people of diverse faiths, with a particular focus on Muslims. *Id.* ¶ 2.

---

[1] As is proper on a motion to dismiss, the Court takes all well-pleaded allegations contained in the amended complaint, ECF 39, as true. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

IPT is a research organization founded in 1995 that represents itself as a storehouse of archival data and intelligence on international terrorist groups. *Id.* ¶ 18. It maintains a website for the publication of its articles and research. *Id.* Various public policy and media organizations, including the Center for American Progress and the Southern Poverty Law Center, have criticized IPT for promoting Islamophobia and characterizing Muslim-Americans as a domestic threat. *Id.* ¶¶ 21–23. Shankar, a "Senior Intelligence Analyst & Director of Research," has worked for IPT since 2005 as a writer, researcher, and research director. *Id.* ¶¶ 13–15, 24.

On August 9, 2019, Shankar published an article on IPT's website titled "NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side." *Id.* ¶ 25. The article falsely stated that Shahidullah ran www.DawahUSA.com, which Shankar characterized as a "proselytizing website . . . that ostensibly seeks to invite people to Islam but in fact serves as a clearinghouse for extremist and Islamist propaganda . . . ." *Id.* ¶ 27. Plaintiffs do not "run" the website www.DawahUSA.com. *Id.* ¶ 30. At the time of the article's publication, plaintiffs did not own or operate a website for Dawah USA. *Id.* ¶¶ 5 n.1, 30. The website www.DawahUSA.com did not mention or refer to Dawah USA or Shahidullah. *Id.* ¶ 31.

Shankar's article highlighted some of the "propaganda" available at www.DawahUSA.com, including speeches and lectures by various "jihadists" and an article denouncing interfaith outreach as "an evil concept contrary to Islam." *Id.* ¶¶ 37–42. The article concluded by stating: "The fact that a hard-core Islamist operating under the guise of an interfaith worker is embraced by law enforcement is concerning and highlights the rising danger from Islamist wolves masquerading in sheep's clothing." *Id.* ¶¶ 3, 43.

Plaintiffs allege that Shankar "did not speak with [them] to inquire about the www.DawahUSA.com website prior to publication." *Id.* ¶ 5. They also allege that Shankar "has

represented that she briefly asked Imam Shahidullah to talk, and when he was unable to immediately schedule a call, she then emailed zbm@nyc.rr.com to seek final comment before publishing the piece." *Id.* ¶ 33. The zbm@nyc.rr.com address was the only contact listed on www.DawahUSA.com. *Id.* ¶¶ 32–33. Shankar "did not otherwise seek or get any confirmation that the website belonged to Plaintiffs." *Id.* ¶ 33.

Indeed, on August 6, three days before the article's publication, Shankar emailed zbm@nyc.rr.com seeking comment from Shahidullah on the website. *Id.* ¶¶ 32–33; ECF 44-6. She wrote:

> Subject: Questions regarding material posted on your website
>
> Dear Mr. Shahidullah.
>
> This follows our phone conversation from earlier today. I wanted to talk to you in connection with material posted on your website (http://www.dawahusa.com/). I understand you are an imam based in New York and do interfaith work, but the material posted on your website appears to contradict this.
>
> I would appreciate your comments in regards to the following questions:
>
> > 1) You do a lot of outreach, but Dawa [sic] USA features posts which say this is forbidden in Islam. How do you reconcile the two messages? For example, an article says interfaith is an "evil concept." (The article can be accessed here: [link omitted])
> > 2) What is the purpose of your interfaith work? Is it about interfaith understanding, or is it part of Dawa [sic]?
> > 3) Why do you feature recordings of extremists and proven radicalizers such as Anwar Al-Awlaki and Zakir Naik?
> > 4) An article on your website advocates Shariah law in America? Do you think America would be a better place if government [sic] by Islamic law? (The article can be accessed here: [link omitted])
> > 5) Another article supports women being fully covered and argues that it will help bring down the number of rapes in the USA. Don't you think wearing the hijab should be a matter of choice?
>
> I called you on Friday and you asked me to call you on Tuesday at 11AM. When I called you today you said you were only available to speak Aug. 24. I have a story regarding the material posted on your website ready to publish. If I do not hear back from you by this evening, I will go ahead and publish my story.

>Thanks and best,
>
>Abha Shankar

ECF 44-6.

Shahidullah did not own the zbm@nyc.rr.com address and thus did not receive the email. ECF 39, ¶ 33. Receiving no response to the email, Shankar published her article on August 9 and reported that "Shahidullah declined to discuss the content of his website after repeated requests for comment." *Id.* ¶¶ 3, 38.

Seven months later, on or around March 4, 2020, Shahidullah first learned about the article from the owner of a print shop that he and Dawah USA knew. *Id.* ¶ 46. The printshop owner told Shahidullah that another customer warned him to be careful of Shahidullah and to disassociate from him because he was associated with "something bad" involving a website. *Id.* At the customer's urging, the printshop owner had searched Shahidullah's name on the Internet and found the article. *Id.* After defending himself against the accusations, Shahidullah searched his name and found the article republished on more than a dozen websites, causing him severe anxiety and stress. *Id.* ¶¶ 47–48.

At 12:32 a.m. on March 5, Shahidullah contacted Shankar on Twitter. *Id.* ¶ 50. He tweeted from the account "itvusanews" (@itvusanews), provided his full name and cell phone number, and stated "I want to talk with you about Dawah website. This is not belong us." *Id.* Sometime after receiving the tweet, Shankar blocked @itvusanews on Twitter. *Id.* ¶ 51. At 9:12 a.m. that same morning, Shahidullah contacted IPT in the same manner, identifying himself and his organization, providing his cell phone number and email address, and stating, "We have no web site dawahusa. We are not associated dawahusa web. I want totalk with yourteam[.]" *Id.* ¶ 52. IPT did not respond. *Id.*

On September 28, Shahidullah's counsel sent a cease-and-desist letter to Shankar and IPT. *Id.* ¶ 53. In response, IPT took down the article, posted a retraction, and promised to "notify other websites who have posted or referred to" the article. *Id.* ¶ 54. In its reply letter to Shahidullah, IPT stated that it retains the right to publish its findings about any connections between Shahidullah and "radical material." *Id.* ¶ 10. Prior to retraction, the article's republication on other websites and social media generated numerous angry and threatening comments about the plaintiffs. *Id.* ¶¶ 56–60.

On December 12, 2020, plaintiffs filed their complaint against IPT's component organizations and Shankar in this Court, asserting one count of defamation. ECF 1. Four months later, on March 26, 2021, plaintiffs filed an amended complaint, adding factual allegations in support of their defamation claim and dropping their claims against IPT's component organizations.[2] ECF 39. This motion to dismiss the amended complaint followed. ECF 43.

## II.   Standard of Review

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). The motion asserts that even if the facts alleged are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Its factual content must allow "the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft*

---

[2] Jurisdiction based on diversity of citizenship of the parties, and venue is proper here because Shankar is a Maryland resident.

*v. Iqbal*, 556 U.S. 662, 678 (2009), even if the "actual proof of those facts is improbable, and [] a recovery is very remote and unlikely," *Twombly*, 550 U.S. at 556 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When resolving a motion to dismiss, the Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). Rather, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)).

On a motion to dismiss, the Court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396 (4th Cir. 2006) (citing *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)); *see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) ("We generally do not consider extrinsic evidence when evaluating the sufficiency of a complaint. However, we may properly consider documents attached to a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic.'") (quoting *Philips v. Pitt Cnty. Mem. Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)). Applying this standard here, the Court considers the amended complaint (ECF 39), the allegedly defamatory article attached as an exhibit to the original complaint (ECF 1-1), and the August 6, 2019 prepublication email from Shankar to zbm@nyc.rr.com attached to defendant's motion to dismiss (ECF 44-6), which plaintiffs refer to and cite in their amended complaint, ECF 39, ¶ 33 (citing ECF 36-2, the same document as ECF 44-6). The other attachments to the parties' submissions, even if they arguably are subject to

judicial notice or otherwise integral to the complaint and authentic, are not necessary to resolve this motion and will not be considered.[3]

### III. Discussion

When sitting in diversity, a federal court applies state substantive law and federal procedural law. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). The parties agree that New York law applies to plaintiffs' defamation claim. ECF 43, at 9; ECF 45, at 9. Under New York law, defamation is "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Cardali v. Slater*, 57 N.Y.S.3d 342, 346 (N.Y. Sup. Ct. 2017) (quoting *Foster v. Churchill*, 665 N.E.2d 153, 157 (N.Y. 1996)). A complaint asserting defamation under New York law must plausibly allege five elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). Defamation per se, which plaintiffs allege, is a false statement that "charges another with a serious crime or tends to injure another in his or her trade, business or profession." *Cardali*, 57 N.Y.S.3d at 346.

---

[3] Shankar attached nine exhibits to her motion to dismiss: (A) plaintiffs' complaint filed and then voluntarily dismissed in the Eastern District of New York, (B) plaintiffs' original complaint in this Court, (C) plaintiffs' amended complaint in this Court, (D) a domain registration report, (E) a declaration from Shankar, (F) Shankar's prepublication email to zbm@nyc.rr.com, (G) the cease-and-desist letter, (H) IPT's response to the cease-and-desist letter, and (I) a copy of *Holy Spirit Ass'n v. Sequoia Elsevier Publ'g Co.*, 4 Media L. Rep. 1744 (N.Y. Sup. Ct. 1978). Plaintiffs attached Dawah USA's 2017 tax documents to their opposition. Shankar attached the same tax documents and an excerpt from the related instructions to her reply. While Shankar urges the Court to consider each of these documents, the Court declines to do so and will consider only those it has identified above.

Plaintiffs have alleged four out of the five elements of defamation. They have alleged that Shankar's statements in her online article that plaintiffs ran a website promoting Islamic extremism were false and caused plaintiffs stress, anxiety, and injury to their reputations. Whether plaintiffs have sufficiently alleged the requisite "fault" is the singular issue here.

As to fault, a plaintiff who is a public official or public figure must allege that the false statement was made with actual malice: that the defendant either knew the statement was false or had a reckless disregard for the truth. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967); *Horne v. WTVR, LLC*, 893 F.3d 201, 204 (4th Cir. 2018); *Palin*, 940 F.3d at 809. Public figures can be either so famous or notorious that they are public figures in all contexts, or they can be limited purpose public figures in certain contexts where they have "thrust [themselves] to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974); *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 318 (4th Cir. 2008); *see also Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015).

The parties agree that Shahidullah and Dawah USA are neither public officials nor all-purpose public figures, but they vigorously dispute whether plaintiffs are limited purpose public figures in the context of this case. This inquiry is complex and fact intensive. *See Gertz*, 418 U.S. at 351–52 (discussing what constitutes a limited purpose public figure); *Hatfill*, 532 F.3d at 319–24 (same). And in this case, it is also unnecessary. Regardless whether plaintiffs are limited public purpose figures, they must allege actual malice under New York law.

A.     **New York's anti-SLAPP statute**

The New York state legislature recently amended the state's anti-strategic litigation against public participation ("anti-SLAPP") statute, New York Civil Rights Law § 76-a.  The amended statute, effective November 10, 2020, provides:

> In an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.

N.Y. Civ. Rights Law § 76-a(2).  An "action involving public petition and participation" is defined as a claim based upon:

> (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.

*Id.* § 76-a(1)(a).[4]  "Public interest" means "any subject other than a purely private matter."  *Id.* § 76-a(1)(d).

In effect, plaintiffs alleging defamation under New York law—whether they are public figures or not—must allege actual malice where the communication giving rise to the claim

---

[4] The amendments to New York's anti-SLAPP statute broadly expanded the definition of "an action involving public petition and participation."  Plaintiffs do not dispute that the amended statute, which took effect after Shankar's article was published but before this action was filed, applies here if its conditions are met.  ECF 45, at 13.  Several courts have held or assumed that the amendments apply retroactively.  *See, e.g.*, *Coleman v. Grand*, 523 F. Supp. 3d 244, 258–59 (E.D.N.Y. Feb. 26, 2021); *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 27 (S.D.N.Y. 2020); *Goldman v. Reddington*, No. RPK-18-3662, 2021 WL 4099462, at *4 (E.D.N.Y. Sept. 9, 2021); *Harris v. Am. Acct. Ass'n*, No. MAD-20-1057, 2021 WL 5505515, at *13–14 (N.D.N.Y. Nov. 24, 2021).

occurred in a place open to the public or a public forum "in connection with an issue of public interest." *Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. Feb. 26, 2021).

### 1. Issue of public interest

Under § 76-a, an "issue of public interest" is any subject other than "a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d). While the term "issue of public interest" is defined only by what it is not ("a purely private matter"), the statute directs that the term "shall be construed broadly." *Id*. The breadth of its construction may be guided by the New York courts' "extremely broad interpretation" of statements on "matters of public concern," a similar concept in New York law that "likewise receive[s] heightened protection." *Coleman*, 523 F. Supp. 3d at 259; *see also Lindberg v. Down Jones & Co.*, No. LAK-20-8231, 2021 WL 3605621, at *7–8 (S.D.N.Y. Aug. 11, 2021) (interpreting "issue of public interest" and adopting definitions from "public concern" precedent). New York law considers a matter of public concern a "dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants." *Coleman*, 523 F. Supp. 3d at 259 (quoting *Fairley v. Peekskill Star Corp.*, 445 N.Y.S.2d 156, 159 (N.Y. App. Div. 1981)). This contrasts with "matters of purely private concern," which New York courts have defined as "publications directed only to a limited, private audience" and "statements falling 'into the realm of mere gossip and prurient interest' . . . ." *Id.* (citations omitted).

Here, the statements in Shankar's article were made in connection with an issue of public interest. The article concerned the dissemination of "extremist and Islamist propaganda," supposedly by a person who had been "embraced by law enforcement" and recently invited to the White House. ECF 1-1. The article further linked extremism to the threat of terrorism, a salient issue both in New York and nationally that affects more than the direct participants in the debate around it. These issues are at the core of IPT's journalism, for better or worse, and a portion of

10

the public cares about them, as evidenced by the republication of and commentary on Shankar's article. ECF 39, ¶¶ 18–23, 48, 56–62. Additionally, Shankar framed her article in the context of "the rising danger from Islamist wolves masquerading in sheep's clothing." *Id.* ¶ 3. While Shankar's article was factually incorrect, it was plainly intended to contribute "to the larger discussions occurring at the time . . . ." *Coleman*, 523 F. Supp. 3d at 259.

Plaintiffs argue that § 76-a does not apply to them because "whether or not [they] are terrorist supporters is not a matter of public interest." ECF 45, at 13. They assert that their "interfaith work is not a dispute that has ramifications for third parties" and that "nobody was discussing Plaintiffs or their interfaith work until" after the article. *Id.* at 14. The Court is not persuaded by plaintiffs' attempt to define the article's subject narrowly and to understate their public presence. Before the article was published, plaintiffs engaged in public discussions about the importance of interfaith dialogue and cooperation between people of diverse faiths and Muslims in particular. ECF 39, ¶¶ 2, 45. The article challenged the credibility of those public statements and questioned how they reconciled with the extremism promoted on a website that Shankar attributed to plaintiffs. As it turns out, plaintiffs did not run the website and were not "wolves masquerading in sheep's clothing," as Shankar wrote. But the article's false statements do not negate the fact that the article addressed the alleged promotion of extremism by a respected community leader—a matter that is beyond purely private. *Cf. Harris v. Am. Acct. Ass'n*, No. MAD-20-1057, 2021 WL 5505515, at *14 (N.D.N.Y. Nov. 24, 2021) (holding published academic research "plainly goes beyond 'a purely private matter'"); *Goldman v. Reddington*, No. RPK-18-3662, 2021 WL 4099462, at *4 (E.D.N.Y. Sept. 9, 2021) (holding Facebook posts using #MeToo and critiquing law enforcement investigation "concerned more than 'a purely private matter'");

*Reus v. ETC Hous. Corp.*, 148 N.Y.S.3d 663, 669 (N.Y. Sup. Ct. 2021) (holding apartment building "which had been a matter of public concern for decades" to be an issue of public interest).

Because the topic of Shankar's article is an issue of public interest, this is an "action involving public petition and participation." Plaintiffs, therefore, must allege facts plausibly showing Shankar made the false statements in the article with actual malice.

### 2. Actual malice

A statement is made with actual malice when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co.*, 376 U.S. at 280; *Sackler*, 144 N.Y.S.3d at 534 (quoting *Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 647 N.E.2d 101, 104 (N.Y. 1995)). "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also Garrison v. Louisiana*, 379 U.S. 64, 74 (1964) (ruling plaintiff must show that defendant had "high degree of awareness of . . . probable falsity"). The standard imposes a heavy burden of proof on the plaintiff, "a burden that is designed to assure to the freedoms of speech and press that breathing space essential to their fruitful exercise." *Contemp. Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988) (quoting *Gertz*, 418 U.S. at 342) (internal quotations omitted).

The inquiry is subjective and focuses upon the publisher's state of mind at the time of publication. *Kipper v. NYP Holdings Co.*, 912 N.E.2d 26, 29 (N.Y. 2009); *Horne*, 893 F.3d at 211. As such, actual malice can be established through a combination of circumstantial evidence, including "the defendant's own actions or statements, the dubious nature of his sources, [and] the inherent improbability of the story," as well as ill will towards the plaintiff. *Celle v. Filipino*

*Reporter Enters.*, 209 F.3d 163, 183 (2d Cir. 2000) (quoting *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1293 (D.C. Cir. 1988)).

"[T]he usual standards of notice pleading apply in defamation cases," including those where the plaintiff must establish actual malice. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (quoting *Hatfill*, 416 F.3d at 329); *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (observing "every circuit that has considered the matter has applied the *Iqbal*/*Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice"). Thus, to survive a motion to dismiss, the complaint must "allege[] facts that, if proven, create a plausible inference that [the defendant published the statements] with knowledge or reckless disregard of their falsity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 293 (4th Cir. 2021).

Here, Shankar's statements in her prepublication email to an address she believed belonged to Shahidullah indicate she did not act with actual malice. Three days before Shankar published her article, she emailed zbm@nyc.rr.com, the only contact listed on the www.DawahUSA.com website. ECF 39, ¶ 33. She addressed her email to "Mr. Shahidullah" and stated she was following up on their conversation from earlier that day. ECF 44-6. She referred several times to "your website," www.DawahUSA.com. *Id.* These statements indicate that Shankar believed she was emailing Shahidullah, with whom she believed she had spoken earlier in the day, and that she believed the website belonged to him and his organization Dawah USA. Shankar also stated: "I understand you are an imam based in New York and do interfaith work, but the material posted on your website appears to contradict this." *Id.* She asked five questions about Shahidullah's interfaith work and how it reconciles with the extremism on the website. *Id.* She concluded by

13

stating she spoke to Shahidullah recently, but he was not available to talk again until August 24. *Id.* She then wrote, "I have a story regarding the material posted on your website ready to publish" and advised him she would publish her story if she did not hear from him by that evening. *Id.* This email strongly indicates that, at the time of publication, Shankar believed Shahidullah owned and was responsible for the content on www.DawahUSA.com.

Plaintiffs acknowledge that Shankar sent an email seeking Shahidullah's comment on the website, but they nonetheless allege that actual malice can be inferred from Shankar's failure to investigate and confirm who actually ran the website. ECF 45, at 17. The failure to investigate can establish actual malice where it rises to the level of "the purposeful avoidance of the truth." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989); *Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 647 N.E.2d 101, 104 (N.Y. 1995). Plaintiffs allege that www.DawahUSA.com "makes no reference" to them, ECF 39, ¶ 31; that Shankar had access to Dawah USA's tax records, which showed the organization did not exist prior to 2017, years after the creation of www.DawahUSA.com in 2008, *id.* ¶¶ 34–35; and that Shankar published without comment from Shahidullah, Dawah USA, or the only contact listed on the website, *id.* ¶¶ 5, 33, 44. These allegations, even if true and viewed in the light most favorable to the plaintiffs, do not rise to the level of "purposeful avoidance of the truth." The website and Shahidullah's organization Dawah USA Inc. share the same name (except for "Inc."), making it reasonable to believe that Dawah USA was responsible for the website content. As for the failure to compare Dawah USA's tax records with records showing when the website was established, this does not amount to purposefully avoiding the truth. Even if Shankar had uncovered this information, the fact that the website was created before Dawah USA was established does not raise obvious red flags because websites can change ownership. And even though Shankar published the article without obtaining

a comment from Shahidullah about the website or receiving a response to her email—a clear error in hindsight—her efforts to obtain Shahidullah's comments before she published belie the notion that she purposefully avoided the truth. *Id.* ¶ 33.

Plaintiffs also allege facts from which they infer motive on the part of Shankar and IPT to disparage Muslims generally and Shahidullah in particular. Plaintiffs highlight commentary from public policy and media organizations that IPT promotes Islamophobia and depends on it to raise funds. *Id.* ¶¶ 21–23, 66–67. They argue that Shankar had a pre-conceived story of "Islamist wolves masquerading in sheep's clothing" and "consciously set out to make the evidence conform" to it. ECF 45, at 19 (quoting *Harris v. City of Seattle*, 152 F. App'x 565, 568 (9th Cir. 2005)). Evidence of ill will alone cannot establish actual malice, but it is relevant and can be considered alongside other evidence. *Celle*, 209 F.3d at 183 (citing *Harte-Hanks Commc'ns*, 491 U.S. at 666). Plaintiffs' allegations of IPT's and Shankar's ill will towards them and Muslims in general might plausibly suggest Shankar acted with actual malice *if* she had not made an effort to reach out to Shahidullah before she published her story. But she did. Shankar tried to contact Shahidullah to provide him with an opportunity to comment on her story. Her effort to seek comment is inconsistent with a plan to "make the evidence conform" to a pre-conceived story.[5]

Finally, plaintiffs argue Shankar's decision to block Shahidullah on Twitter after he tweeted at her about the website suggests she published the article with actual malice. ECF 39, ¶¶ 7, 51, 65. Normally, post-publication events are of dubious relevance to an actual malice inquiry,

---

[5] Plaintiffs also argue that Shankar and IPT's October 5, 2020, response to the cease-and-desist letter—that IPT "retains the right" to publish research about Shahidullah's connections to "radical material"—is evidence of continued ill will towards plaintiffs. ECF 39, ¶¶ 10, 68. While post-publication conduct may be relevant to an actual malice inquiry, the news organization's response to the cease-and-desist letter is not particularly probative of Shankar's state of mind when she wrote the article fourteen months earlier.

which focuses on subjective state of mind at the time of publication. *Herbert v. Lando*, 781 F.2d 298, 309 (2d Cir. 1986); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 281 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015). However, in rare circumstances, certain post-publication conduct can evidence a guilty conscience or an attempt to bolster or hide a known falsehood. *See Stern v. Cosby*, 645 F. Supp. 2d 258, 279–80 (S.D.N.Y. 2009) (finding post-publication attempt to pay sources to affirm their accounts under oath could reasonably be viewed as evidence that "[the defendant] knew she had fabricated [the statement] and was desperate to come up with an after-the-fact verification"). Shahidullah tweeted at Shankar at 12:31 a.m., seven months after the article's publication, from an account named @itvusanews. ECF 39, ¶ 50. The tweet stated "I want to talk with you about Dawah website. This is not belong us." *Id*. Although he stated his name and provided a cell phone number, he did not mention the article at all. Without more factual content from which to infer a guilty conscience, the Court does not find such an inference reasonable based on Shankar's decision to block @itvusanews following a late-night tweet from someone identifying himself as Shahidullah, seven months after the publication of her article. Even when viewed in the light most favorable to plaintiffs, the fact that Shankar blocked an account after an informal outreach on a public platform where impersonation, harassment, and scams are common does not plausibly suggest she was attempting to hide that she knew www.DawahUSA.com did not belong plaintiffs when she published her article.

The Court finds that plaintiffs' allegations of ill will and a failure to investigate the ownership of www.DawahUSA.com do not plausibly allege actual malice and are strongly rebutted by Shanker's prepublication email seeking comment from the person she mistakenly believed was responsible for the website. While it may have been improbable that Shahidullah, a

16

respected imam and interfaith advocate, would operate a website espousing views contrary to his public persona, that perceived hypocrisy was the impetus for Shankar's article.

Reasonable minds in the field of journalism may debate whether Shankar should have undertaken a more thorough investigation into who was responsible for the website's content, as she clearly made a mistake—one that apparently damaged plaintiffs' reputations and caused Shahidullah stress and anxiety. But under New York Civil Rights Law § 76-a, the question is whether Shankar acted with actual malice. This inquiry turns on whether, when Shankar published the article, she had knowledge of its falsity or serious doubts about its truthfulness. Plaintiffs have failed to plausibly allege either. Therefore, the complaint must be dismissed.[6]

### B. Dismissal with Prejudice

Shankar requests dismissal with prejudice, arguing that this is plaintiffs' "third failed attempt to articulate a cognizable claim." ECF 43-1, at 8 n.2. Whether to dismiss with prejudice under Rule 12(b)(6) lies within the Court's discretion. *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985). Prior opportunity to amend in response to opposing arguments may demonstrate the futility of further opportunities to amend. *Woods v. Wash. Metro. Area Transit Auth.*, No. PWG-18-3494, 2019 WL 3766508, at *7 (D. Md. Aug. 9, 2019) (citing *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013)), *aff'd sub nom.*, 785 F. App'x 188 (4th

---

[6] Defendant separately argues that plaintiffs' counsel, the Council on American and Islamic Relations (CAIR) Legal Defense Fund, "might be viewed" as engaging in illegal champerty under New York law. ECF 43-1, at 27. The doctrine of champerty forbids the purchase of a right of action or some share in a lawsuit's proceeds by an otherwise-uninvolved third party or "officious intermeddler." *Gowen v. Helly Nahmad Gallery, Inc.*, 77 N.Y.S.3d 605, 631 (N.Y. Sup. Ct. 2018). Defendants claim that because CAIR did not sign the complaint "on behalf of plaintiffs," the Court should infer that CAIR purchased the right to pursue the defamation claim on its own behalf by supplying legal counsel to plaintiffs. ECF 43-1, at 27. This argument is meritless. CAIR signed the complaint "Attorneys for Plaintiffs." The only fair reading of the complaint is that CAIR represents the plaintiffs in this case, as it and other public interest legal organizations commonly do in civil rights and civil liberties matters.

Cir. 2019); *see also Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (holding that dismissal with prejudice was warranted where "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability") (citing *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 391 (4th Cir. 2005)).

Plaintiffs first filed a complaint against Shankar and IPT in the Eastern District of New York, *Shahidullah v. Investigative Project on Terrorism Found.*, No. AMD-20-5300 (E.D.N.Y. filed Nov. 2, 2020, and terminated by voluntary dismissal Dec. 14, 2020), which they voluntarily dismissed. They then filed a revised complaint in this district. ECF 1. After defendants filed a motion for sanctions pointing out deficiencies in the complaint, including those pertaining to actual malice, *see* ECF 34-1, at 11–14, plaintiffs amended their complaint, *see* ECF 39. The amended complaint still failed to allege factual content supporting the inference of actual malice. Additional opportunities to amend would be futile, particularly because plaintiffs must acknowledge Shankar's prepublication effort to contact Shahidullah as the owner of www.DawahUSA.com. Dismissal with prejudice is appropriate. *Cf. Aletum v. Kuehne + Nagel Co.*, No. ELH-19-1972, 2020 WL 3577409 (D. Md. July 1, 2020) (dismissing complaint with prejudice where "Defendants each identified the Complaint's deficiencies meaning [the plaintiff] had an opportunity to amend to specifically address such deficiencies but did not sufficiently do so"), *appeal dismissed sub nom.*, 837 F. App'x 209 (4th Cir. 2021).

**ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is, this 31st day of January, 2022, hereby ORDERED:

1. Defendant's motion to dismiss plaintiffs' complaint, ECF 43, IS GRANTED;

2. Plaintiffs' complaint IS DISMISSED with prejudice; and

3. The Clerk SHALL CLOSE this case.

Deborah L. Boardman
United States District Judge